**Gerald GELLES and Darst Associates Limited Partnership, Plaintiffs–Appellants,**

v.

**TDA INDUSTRIES, INC., Douglas P. Fields and Frederick M. Friedman, Defendants–Appellees.**

No. 1112, Docket 93–7851.

United States Court of Appeals, Second Circuit.

Argued Feb. 16, 1994.

Decided Dec. 28, 1994.

---

Peter S. Pearlman, Saddle Brook, NJ (William D. Hummell, Abraham I. Katsman, Cohn Lifland Pearlman Herrmann & Knopf, Saddle Brook, NJ, of counsel), for plaintiffs-appellants.

Donald H. Shaw, New York City (Stephen F. Markstein, Shaw & Markstein, New York City, of counsel), for defendants-appellees.

Before: NEWMAN, MAHONEY, and CAMPBELL,* Circuit Judges.

MAHONEY, Circuit Judge:

Plaintiffs-appellants Gerald Gelles and DARST Limited Partnership ("DARST") appeal from a judgment entered July 27, 1993 in the United States District Court for the Southern District of New York, Michael B. Mukasey, *Judge,* that granted the motion of defendants-appellees TDA Industries, Inc. ("TDA"), Douglas P. Fields and Frederick M. Friedman for summary judgment dismissing plaintiffs-appellants' federal securities law claim, as well as defendants-appellees' motion to dismiss, for lack of subject matter jurisdiction, plaintiffs-appellants' pendent state law claim for dissolution of TDA pursuant to N.Y.Bus.Corp.Law § 1104–a(a)(1). The district court dismissed the federal securities fraud claim on the ground that plaintiffs-appellants, participants in a "going private" transaction, did not satisfy the "purchase or sale of any security" requirement of § 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5.

We affirm the judgment of the district court.

### Background

Prior to 1989, TDA was a public company with approximately eighteen percent of its shares held by the public, twenty-five percent by Gelles (including shares owned by DARST, a partnership controlled by Gelles, and Gelles' interest in two pension and profit sharing trusts), and fifty-seven percent by Fields and Friedman (including their interests in the two pension and profit sharing trusts). Fields, Friedman, and Gelles determined to take TDA private through a "freeze out" merger in which the public shareholders of TDA would receive cash for their shares, and this plan was consummated in May 1989. Preliminarily, the parties formed TDA Acquisition Corp. ("Newco"), and the insiders exchanged their shares in TDA for Newco shares. Then Newco, which held eighty-two percent of the shares of TDA as a result of these exchanges, was merged into TDA, and the public shareholders were paid eighteen dollars a share for their TDA stock. Substantial debt was incurred by TDA to consummate the transaction. After the merger, Fields and Friedman controlled sixty-nine percent of TDA's stock, and Gelles thirty-one percent.

Gelles alleges, and we assume for purposes of this appeal, that Fields and Friedman induced Gelles' consent to taking TDA private by representing that Gelles' employment at TDA, and his positions as a director and senior executive officer of the company, would continue for as long as Gelles wished and would not be impacted by the merger. On June 21, 1990, however, Fields and Friedman advised Gelles that his employment contract would not be renewed and that he would not be reelected to TDA's board or reappointed as an officer. Gelles filed suit on July 30, 1993, seeking damages for violations of § 10(b) and Rule 10b–5 and the dissolution of TDA pursuant to N.Y.Bus. Corp.Law § 1104–a(a)(1).

As previously indicated, the district court dismissed Gelles' complaint on the motions of defendants-appellees. This appeal followed.

### Discussion

A. *The Elements of a Claim under Rule 10b–5.*

Section 10(b) of the Securities and Exchange Act of 1934 provides that:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate

---

* The Honorable Levin H. Campbell, of the United States Court of Appeals for the First Circuit, sitting by designation.

commerce or of the mails, or of any facility of any national securities exchange—

....

(b) To use or employ, *in connection with the purchase or sale of any security* ..., any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b) (emphasis added).

In turn, Rule 10b–5, promulgated by the Securities and Exchange Commission under the authority of § 10(b), provides that:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact, or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

*in connection with the purchase or sale of any security.*

17 C.F.R. § 240.10b–5 (emphasis added).

We have held that:

In order to state a *prima facie* case of a violation of § 10(b), when face-to-face affirmative misrepresentations have been made, a plaintiff must allege:

(1) damage to plaintiff, (2) caused by reliance on defendant's misrepresentations or omissions of material facts, or on a scheme by defendant to defraud, (3) made with scienter (i.e., an intent to deceive, manipulate or defraud, or possibly with reckless disregard), (4) in connection with the purchase or sale of securities, and (5) furthered by defendant's use of the mails or any facility of a national securities exchange.

*Citibank, N.A. v. K–H Corp.,* 968 F.2d 1489, 1494 (2d Cir.1992) (citing *Royal Am. Managers, Inc. v. IRC Holding Corp.,* 885 F.2d 1011, 1015 (2d Cir.1989)). In view of our resolution of the "purchase or sale" issue, we need not decide whether Gelles has established a genuine issue of material fact with regard to the other required elements of his claim.

B. *The Purchase or Sale Requirement under Rule 10b–5.*

A transaction need not involve cash to constitute a purchase or sale under Rule 10b–5. The Supreme Court has held that the simple exchange of shares in a merger qualifies as a purchase or sale when shareholders become "shareholders in a new company" as a result of "an alleged deception [that] has affected shareholders' decisions in a way not at all unlike that involved in a typical cash sale or share exchange." *Securities and Exchange Comm'n v. National Securities, Inc.,* 393 U.S. 453, 467, 89 S.Ct. 564, 572, 21 L.Ed.2d 668 (1969). In determining whether changes in the rights of a security holder involve a purchase or sale, courts must decide whether there has occurred "such significant change in the nature of the investment or in the investment risks as to amount to a new investment." *Abrahamson v. Fleschner,* 568 F.2d 862, 868 (2d Cir.), *cert. denied* 436 U.S. 905, 913, 98 S.Ct. 2236, 2253, 56 L.Ed.2d 403, 414 (1978). A distinction is drawn between an " 'internal corporate management' decision which only incidentally involve[s] an exchange of shares ... [and] a major corporate restructuring requiring the same kind of investment decision by the shareholders as would a proposed merger with a separate existing corporation." *In re Penn Central Sec. Litig.,* 494 F.2d 528, 534 (3d Cir.1974). Only the latter constitutes a purchase or sale for purposes of Rule 10b–5.

Two exchanges of shares occurred with respect to Gelles. First, Gelles exchanged his TDA shares for shares of Newco. Second, Gelles exchanged his Newco shares for TDA shares. Neither of these exchanges modified the underlying assets

upon which Gelles relied for the residual claim to which he was entitled through his shares. The only effect of the exchanges was to alter the insiders' voting power with respect to TDA.

The remaining elements of the exchange included a management decision to assume additional debt and to repurchase public shares. Although this repurchase of shares was certainly a disposition under Rule 10b–5 with respect to the public shareholders who no longer had any claim upon TDA's assets, it was not a disposition with respect to Gelles. Gelles held literally the exact same shares before and after the transaction.

Gelles argues, however, that the transaction taken as a whole constituted a "major corporate restructuring" and was therefore an actual purchase or sale within the meaning of Rule 10b–5. Three principal events occurred: (1) TDA became a private company; (2) TDA replaced eighteen percent of its equity with debt; and (3) Fields and Friedman's share of the TDA equity increased from fifty-seven to sixty-nine percent, increasing their holdings above the two-thirds supermajority required for some major corporate transactions under New York law. Gelles argues that he had the power to either block these changes or require the payment of cash for his shares. Instead, he agreed to the transaction, constructively selling his shares in TDA as previously controlled for shares in TDA under a new ownership structure, allegedly in reliance upon Fields and Friedman's misrepresentations concerning Gelles' future employment and compensation.

We are not persuaded that any of these features, or all of them in combination, satisfy the "purchase or sale" requirement of § 10(b) and Rule 10b–5. Substantially similar rearrangements of internal corporate governance could have been effected in a number of ways that would not even arguably have involved any purchase or sale of Gelles' shares. For example, a successful tender offer for the public shares or a reverse stock split at a sufficiently high exchange ratio could have eliminated most or all of the public shareholdings. The fact that the TDA insiders used paper exchanges of shares with a shell corporation to effectuate the control

change does not render such a change a Rule 10b–5 purchase or sale. Further, we cannot regard the incurring of public debt by TDA to retire the minority public shareholdings as so radically altering the corporation as to render the surviving shareholdings a "new investment" within the meaning of *Abrahamson*.

*Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977), is instructive concerning the resolution of this issue. In *Santa Fe*, the Supreme Court found that minority shareholders whose shares were repurchased at a price allegedly far below their fair value in a "short-form merger" under the Delaware Corporation Law did not have a cause of action under § 10(b) and Rule 10b–5 because the conduct "was neither deceptive nor manipulative" within the meaning of the statute. *Id.* at 474, 97 S.Ct. at 1301. The Court noted that the minority shareholders were simply presented with a choice to accept or reject the allegedly unfair price offered. *Id.*

The Court also discussed "additional considerations that weigh heavily against permitting a cause of action under Rule 10b–5 for the breach of corporate fiduciary duty alleged in [Green's] complaint." *Id.* at 477, 97 S.Ct. at 1303. Two factors influenced the Court's decision. First, the plaintiffs principally alleged that they were treated unfairly. The Court found that creating a private cause of action was consequently unnecessary because the "fundamental purpose" of the Securities and Exchange Act is to "implement[ ] a philosophy of full disclosure." 430 U.S. at 478, 97 S.Ct. at 1303 (internal quotations omitted). The Court explained that "once full and fair disclosure has occurred, the fairness of the terms of the transaction is at most a tangential concern of the statute," *id.* (citing *Mills v. Electric Auto–Lite Co.*, 396 U.S. 375, 381–85, 90 S.Ct. 616, 620–22, 24 L.Ed.2d 593 (1970)), and that "we are reluctant to recognize a cause of action ... to serve what is 'at best a subsidiary purpose' of the federal legislation." *Id.* (quoting *Cort v. Ash*, 422 U.S. 66, 80, 95 S.Ct. 2080, 2089, 45 L.Ed.2d 26 (1975)).

As an insider himself, Gelles does not allege any failure of disclosure regarding infor-

mation about the corporation or the nature of any corporate security. Defendants-appellees' alleged failure to disclose an intent to deal unfairly regarding Gelles' future personal employment is "at most a tangential concern of the statute." *Id.* (citations omitted). No danger to the "philosophy of full disclosure" underpinning federal securities regulation is presented.

The second factor used in *Santa Fe* to determine whether Congress intended to create a federal cause of action was "whether the cause of action is one traditionally relegated to state law." *Id.* (citations and internal quotations omitted). Since Delaware had "supplied minority shareholders with a cause of action ... to recover the fair value of shares allegedly undervalued in a short-form merger," *id.*, and the reasoning necessary to find a cause of action under Rule 10b–5 "could not be easily contained," *id.*, the Court declined to extend a federal remedy. The Court explained that:

> It is difficult to imagine how a court could distinguish, for purposes of Rule 10b–5 fraud, between a majority stockholder's use of a short-form merger to eliminate the minority at an unfair price and the use of some other device, such as a long-form merger, tender offer, or liquidation, to achieve the same result; or indeed how a court could distinguish the alleged abuses in these going private transactions from other types of fiduciary self-dealing involving transactions in securities. The result would be to bring within the Rule a wide variety of corporate conduct traditionally left to state regulation.

*Id.*

We are similarly concerned with containment of federal jurisdiction under the securities laws, given the facts alleged by Gelles. Gelles' claim amounts to an allegation that he supported a management proposal to take TDA private in exchange for an employment agreement. A host of promises and representations are undoubtedly made between insiders every time a new management initiative dealing with changes in control and/or capital structure is negotiated. We see no policy reason to extend federal jurisdiction under the securities laws, which principally implement a disclosure regime, to an area of law so clearly governed by, and traditionally the province of, state law. As the Court stated in *Cort v. Ash:* "Corporations are creatures of state law, and investors commit their funds to corporate directors on the understanding that, except where federal law expressly requires certain responsibilities of directors with respect to stockholders, state law will govern the internal affairs of the corporation." 422 U.S. at 84, 95 S.Ct. at 2091; *cf. Superintendent of Ins. v. Bankers Life & Casualty Co.,* 404 U.S. 6, 12, 92 S.Ct. 165, 168–69, 30 L.Ed.2d 128 ("Congress by § 10(b) did not seek to regulate transactions which constitute no more than corporate mismanagement."). Gelles must rely upon state law to remedy the fraud alleged here.

Finally, we agree with the district court's determination not to exercise supplemental or pendent jurisdiction over Gelles' state law claim, the federal securities claim having been dismissed. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

### Conclusion

The judgment of the district court is affirmed.