**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 3 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

CIRO REALMONTE;
FRANK REALMONTE;
SALVATORE REALMONTE,

      Plaintiffs-Appellants,

v.

ALVIN REEVES, JR.; COOPERS &
LYBRAND, L.L.P.,

      Defendants-Appellees.

No. 98-6079

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. CIV-97-542-C)

---

Submitted on the briefs:

Mark C. Dangerfield, Grant, Williams, Lake & Dangerfield, P.C., Phoenix,
Arizona, for Plaintiffs-Appellants.

Margaret M. Enloe, Associate General Counsel, Coopers & Lybrand, L.L.P.,
New York, New York, B.J. Rothbaum, Linn & Neville, P.C., Oklahoma City,
Oklahoma, for Defendants-Appellees.

---

Before **BALDOCK** , **EBEL** , and **MURPHY** , Circuit Judges.

---

**MURPHY** , Circuit Judge.

Plaintiffs Ciro, Frank, and Salvatore Realmonte (the Realmontes) appeal the district court's dismissal of their federal securities fraud action brought against defendants Alvin Reeves, Jr. and Coopers & Lybrand, L.L.P., pursuant to sections 10(b) and 20(a) of the Securities and Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), 17 C.F.R. § 240.10b-5, state, and common law. The district court dismissed the action on statute of limitations grounds and subsequently denied the Realmontes' Fed. R. Civ. P. 59(e) motion to alter or amend judgment.. [1]

## I. Background

Prior to December 8, 1993, the Realmontes owned seventy-five percent of the stock in R&B Quality Foods, Inc. in Scottsdale, Arizona. [2] At this same time, defendant Alvin Reeves was president, chief financial officer, and treasurer of Skolniks, Inc. (Skolniks), a publicly-owned bagel company whose stock traded on the NASDAQ. Defendant Coopers & Lybrand served as outside auditor for Skolniks.

---

[1] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). Therefore, the parties' requests for oral argument are denied, and the case is ordered submitted without oral argument.

[2] The remaining twenty-five percent of the stock in R&B was owned by Antonino M. Balbo, who is not a party to this action.

Early in 1993, Reeves approached the Realmontes inquiring about the possibility of Skolniks purchasing R&B in exchange for Skolniks stock. Although Skolniks had suffered financial losses in 1992, it had shown gains so far in 1993, and Reeves provided the Realmontes with a positive outlook for the remainder of 1993 and 1994. In reliance on Reeves' representations, on October 29, 1993, the Realmontes signed a letter agreement with Skolniks which contemplated the future merger of R&B into Skolniks in exchange for approximately 126,667 shares of Skolniks stock. The letter agreement referred to a future merger agreement which the parties agreed to negotiate in good faith.

At the time the Realmontes signed the letter agreement, Coopers & Lybrand was in the process of completing its audit of Skolniks, which they issued on November 12, 1993. In its audit report, Coopers & Lybrand gave its unqualified opinion certifying Skolniks' 1993 financial statements and confirming Skolniks' improved financial position and future outlook. On December 8, 1993, the sale of R&B to Skolniks was consummated, and the Skolniks stock certificates were transferred to the Realmontes and Balbo. [3] The Realmontes assert that Reeves and Coopers & Lybrand did not disclose Skolniks' true financial picture, and had they done so, the Realmontes would not have agreed to the merger.

---

[3]     The Realmontes received 95,000 shares of Skolniks stock with the remainder going to Balbo.

In November 1994, a class action alleging securities fraud was filed against Reeves in federal district court. An amended complaint was filed on February 10, 1995, adding Coopers & Lybrand as a defendant, and stating that the action was brought "on behalf of all person[s] and entities (the 'Class') who purchased Skolniks common stock during the period from November 3, 1993 through October 25, 1994, inclusive (the 'Class Period')." [4] Appellants' App. Vol. 1 at 14. The amended complaint exempted from the class the defendants and their families, any person or entity in which the defendants may have a controlling interest or to which the defendant may be affiliated, and any legal representative of any exempted party. See id. at 14-15.

On September 19, 1996, the district court certified the class for the purpose of approving a settlement agreement. The certification order provided that any putative class member could opt out by notice to lead counsel. Upon receipt of the notice of settlement, the Realmontes, who objected to the terms of the settlement agreement, elected to opt out, and on November 11, 1996, submitted written notice of their decision to be excluded. Due to a large number of persons electing to be excluded, the settlement agreement, as originally submitted, was

---

[4] According to the class action complaint, during the class action period, Skolniks stock was trading at approximately $14.00 a share. After it was revealed that Skolniks was not as financially sound as represented, the stock dropped to $1.00 a share, was eventually delisted by NASDAQ, and is now considered worthless. See Appellants' App. Vol. 1 at 2.

not approved.  A new settlement agreement was negotiated and eventually approved.

The Realmontes filed this action on April 10, 1997.  The district court dismissed the Realmontes' complaint on statute of limitations grounds, concluding that the Realmontes did not acquire their stock within the class period, November 3, 1993, through and including October 25, 1994, and therefore were not entitled to the equitable tolling of the statute of limitations during the pendency of a class action.  In so holding, the court had before it the October 29, 1993 letter agreement between Skolniks and the Realmontes and the December 8, 1993 merger agreement.  The court held that, because the letter agreement and the merger agreement referred to an "effective" date of October 30, 1993, that was the date of purchase for purposes of the running of the statute of limitations.  This finding placed the Realmontes' acquisition outside the class period.  The court also determined that because the Realmontes acquired their stock in "a stock-for-stock transaction" and not "on the open market,"     the Realmontes could not be considered class members.     Appellants' App. Vol. II at 427,    430.

On appeal, the Realmontes assert that the district court erred in its findings that the method and timing of their acquisition of Skolniks stock precluded them from class membership.  We agree, and for the following reasons, we reverse the district court's dismissal.

## II. Discussion

### A. Standard of Review

Where, as here, a party moves to dismiss pursuant to Fed. R. Civ. P. 12(c), we review the judgment on the pleadings de novo. See McHenry v. Utah Valley Hosp., 927 F.2d 1125, 1126 (10th Cir. 1991). In reviewing a motion to dismiss, we accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the non-moving party. See Yoder v. Honeywell Inc., 104 F.3d 1215, 1224 (10th Cir. 1997).

### B. Statute of Limitations

In American Pipe & Construction Co. v. Utah, 414 U.S. 538, 552-53 (1974), the Supreme Court held that commencement of a class action tolls the running of the applicable statute of limitations for all class members who upon denial of certification make timely motions to intervene.[5] In Crown, Cork & Seal

---

[5]  In Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 364 (1991) (superceded by statute on different holding), the Supreme Court concluded that § 10(b) actions "must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation." Accord Sterlin v. Biomune Sys., 154 F.3d 1191, 1195 (10th Cir. 1998). The district court determined that the applicable period for the Realmontes' state securities fraud claim was "two years from the date they discovered the fraud but no more than three years after purchase of the security, 71 Okla. Stat. § [408(f)]," and for the fraud and negligence claims, "two years from the discovery of a fraud or negligence claim, 12 Okla. Stat. § 95(3)."

(continued...)

-6-

Co. v. Parker , 462 U.S. 345, 350-52 (1983), the Court extended the tolling of the statute of limitations to those seeking to bring individual actions in the event class certification is denied, and to those electing to opt out of the class action in order to file individual claims.   In American Pipe  and Crown, Cork & Seal  the class certification was denied.  In the instant case the class was certified for the purpose of approving a settlement agreement.

Relying on  American Pipe  and Crown, Cork & Seal  , defendants argue that "[t]he filing of a complaint containing class action allegations, . . . interrupts the running of statutes of limitation    *only* as to persons who would have been members of a properly defined class and    *only* if a motion to maintain a class suit has been *denied.* "  Appellees' Br. at 8-9.  Defendants assert that the tolling rule of American Pipe  has "*never*  been applied in a case in which class certification has been *granted."*  Id. at 9.  Contrary to defendants' confident statement, there are a number of cases in which the tolling rule of     American Pipe  has been applied when a class action has been certified.     See, e.g. , Adams Pub. Sch. Dist. v. Asbestos Corp. , 7 F.3d 717, 718 n.1 (8th Cir. 1993) (decision to opt out rather than denial of class certification "irrelevant" to tolling);     Tosti v. City of Los Angeles   , 754 F.2d 1485, 1488 (9th Cir. 1985) (when class certification has been granted,

statute of limitations begins running anew from date class member opts out); Edwards v. Boeing Vertol Co. , 717 F.2d 761, 766 (3d Cir. 1983) (distinction based on whether class was denied or certified for application of tolling rule "would make no sense"). [6]

Rule 23(c)(2) requires notice to all class members that they can, upon request, be excluded from the class. See also Eisen v. Carlisle & Jacquelin , 417 U.S. 156, 173 (1974). We agree with the Court in Crown, Cork & Seal , that without tolling, this rule would be irrelevant because the statute of limitations period for absent class members would, more often than not, have expired, making the right to pursue individual claims meaningless. See 462 U.S. at 351-52.

Considering the Supreme Court's rationale that tolling the applicable statute of limitations during the course of a class member's participation would serve to prevent the "needless duplication of motions" and protective filings by parties seeking to preserve their rights, we believe that, in this case, the tolling

---

[6] Defendants cite to Basch v. Ground Round, Inc. , 139 F.3d 6 (1st Cir.), cert. denied , 119 S. Ct. 165 (1998) to support this argument. In Basch , the court held that, even assuming the tolling rules of American Pipe and Crown, Cork & Seal applied to Age Discrimination in Employment Act cases, it would not have saved the plaintiffs' case because their tolling claim depended on the "stacking" of two sequential class actions in order to keep their claims timely. See 139 F.3d at 11. We determine that the facts and holding in Basch are inapposite here.

rule would even be more strongly applicable.     American Pipe , 414 U.S. 553-54.

Therefore, we hold that the fact that the Realmontes' participation in the class

action terminated with a decision to opt out of a certified class rather than with

the denial of class certification is irrelevant to the applicability of the     American

Pipe tolling rule.

## C. Method of Stock Acquisition

The district court found that the Realmontes' stock was acquired in a

stock-for-stock transfer, was not traded on the open market, and was subject to

certain restrictions. The court decided that these facts precluded the Realmontes

from being considered putative class members thus depriving them of the tolling

of the statute of limitations afforded class members desiring to file individual

claims.

Among the purposes of Fed. R. Civ. P. 23 is to assure that courts will

properly identify the common interests of class members and evaluate the ability

of the named plaintiff and counsel to fairly and adequately protect the interests of

the class. The requirements for class certification pursuant to Rule 23(a) are:

(1) the proposed class must be so numerous that joinder of all members is

impracticable; (2) the party seeking class certification must demonstrate that there

is at least one question of law or fact common to the class; (3) the claims of the

representative plaintiffs must be typical of the claims of the class; and (4) the

representative parties must demonstrate an ability to fairly and adequately represent the interests of the class members.

Here, we are concerned with whether the Realmontes' claims were common to those of the class. Commonality is not necessary on every issue raised in a class action. See DeBoer v. Mellon Mortgage Co., 64 F.3d 1171, 1174 (8th Cir. 1995). In fact, "Rule 23 is satisfied when the legal question linking the class members is substantially related to the resolution of the litigation." Id. (further quotation omitted).

On appeal the Realmontes argue that the Supreme Court's case of SEC v. National Securities, Inc., 393 U.S. 453 (1969) is dispositive. In National Securities, the Court reviewed the Rule 12(b)(6) dismissal of the SEC's complaint alleging that the merger of two insurance companies, National Life & Casualty Insurance Co. and Producers Life Insurance Co., was in violation of Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5. See id. at 455-56. Because of certain alleged misrepresentations, Producers' shareholders were misled into approving the merger, thus losing their stock in Producers and becoming stockholders in a new company. See id. at 455.

After determining that, in order to protect stockholders as well as policy holders, federal securities law applied, the Court considered the respondents' argument that the lower court's judgment could be sustained on the alternative

grounds that the SEC complaint failed to allege a "purchase or sale" of securities within the meaning of § 10b-5. The Court agreed that "[f]or the statute and the rule to apply, the allegedly proscribed conduct must have been 'in connection with the purchase or sale of any security.'" Id. at 466 (quoting 15 U.S.C. § 78j(b)). Concluding that Producers' stock exchange constituted a purchase of shares in the new company, the Court opined that "[w]hatever the terms 'purchase' and 'sale' may mean in other contexts, here an alleged deception has affected individual shareholders' decisions in a way not at all unlike that involved in a typical cash sale or share exchange." Id. at 467. We agree with the Realmonte's assertion that National Securities is applicable here.

The Securities Exchange Act of 1934 defines "sale" to include "every contract of sale or disposition of a security or interest in a security, for value." 15 U.S.C. § 77b(3). This section has been interpreted to include exchanges of one security for another. See, e.g. , 7547 Corp. v. Parker & Parsley Dev. Partners, L.P., 38 F.3d 211, 223 (5th Cir. 1994); United States v. Wernes , 157 F.2d 797, 799 (7th Cir. 1946). When an exchange of shares facilitates the merger of two separate and distinct corporate entities, that exchange constitutes a "purchase or sale" for purposes of bringing a Rule 10b-5 action. See National Securities , 393 U.S. at 467; Gelles v. TDA Indus., Inc. , 44 F.3d 102, 104 (2d Cir. 1994). Therefore, as a matter of law, we conclude that the Realmontes were purchasers

of Skolniks stock for purposes of bringing federal securities fraud claims which were the basis of the class action.

Here, the district court did not cite any authority or offer any rationale to support its conclusion that the Realmontes' claims were not in common with those of the rest of the class. It states only that "the difference in the method in which these plaintiffs acquired Skolniks stocks provides an additional reason for finding plaintiffs are not properly considered among the class of plaintiffs in the [class action]." Appellants' App. Vol. II at 430. This finding is erroneous. The Realmontes assert in their complaint, which the court must construe as true, see Yoder, 104 F.3d at 1224, that they relied on the representations of Reeves and Coopers & Lybrand as to the financial condition and future of Skolniks in making their decision to go through with the merger. Therefore, it can be assumed that defendants' alleged deceptions influenced the Realmontes' decision in the same way the alleged deceptions influenced those who bought Skolniks stock on the open market. [7]

---

[7] Pursuant to the factual averments in the class action complaint and in the Realmontes' complaint, in making their respective decisions regarding the acquisition of Skolniks stock, the class members and the Realmontes relied on the alleged overstated financial statements and projections of Skolniks officers, the report of the outside auditors, and press releases. See Appellants' App. Vol. 1 at 3-6, 144-47.

The claims of the Realmontes and the other class members allege that they relied, to their detriment, on defendants' actions, conduct, and representations as to the financial condition and future of Skolniks. Therefore, under these facts, the Realmontes' acquisition of their Skolniks stock through the merger does not render their claims atypical of a class member who acquired Skolniks stock on the open market. Cf. Alpern v. UtiliCorp United, Inc., 84 F.3d 1525, 1540 (8th Cir. 1996) (plaintiff's acquisition of stock through a dividend reinvestment plan did not render his claim atypical of those of members of the class who purchased stock on the open market).

## D.  Date of Stock Purchase

Next, the district court determined that "[b]ecause plaintiffs here acquired their Skolniks stock outside the window of time established for the [class action] (November 3, 1993, through October 25, 1994), . . . the doctrine of equitable tolling does not save plaintiffs' claim." Appellants' App. Vol. II at 430. In so finding, the district court relied on notations in both the October 29, 1993 letter agreement and the December 8, 1993 merger agreement between the Realmontes and Skolniks stating that the closing would be "effective as of October 30, 1993." Appellants' App. Vol. II at 426.

The Realmontes argue that the "sale" did not occur until December 8, 1993, when the parties were committed to the transaction and the acquisition was

-13-

consummated. They contend that the October 30, 1993 effective date was "wholly arbitrary and likely had more to do with corporate bookkeeping than anything else." Appellants' Br. at 18.

Coopers & Lybrand argues that, because the Realmontes acquired their Skolniks stock on October 30, 1993, they cannot claim that they relied on any alleged misrepresentations in the November 12, 1993 audit report. We determine this argument to be unpersuasive. Moreover, it is inconsistent with a note to Skolniks' financial statements in Coopers & Lybrand's audit report discussing the proposed merger at some length, including a summary of R&B's unaudited financial statements. See Appellants' App. Vol. II at 565. In this note, Coopers & Lybrand stated that the closing was "subject to certain conditions to be fulfilled and the signing of a definitive agreement." Id. The report asserted that although "there is no assurance that the acquisition will be consummated," Skolniks believed that there was a "substantial likelihood that the acquisition will occur as planned." Id. Therefore, contrary to Coopers & Lybrand's assertion, at the time of its report, no stock had changed hands and the merger was far from consummated.

Defendants further argue that the Realmontes "became obligated" to transfer R&B stock on October 30, 1993. Appellees' Br. at 4. Our reading of the

October 29, 1993 letter agreement does not lead us to that conclusion.  The letter agreement states:

> 5. Closing .  The closing of the transactions described in this letter shall occur at Oklahoma City, Oklahoma, at a time to be designated by Skolniks, with time being of the essence, but in any event immediately following the satisfaction of all conditions to closing. The closing shall be made effective as of October 30, 1993. However, all references to closing made herein shall refer to the date upon which the closing actually occurs.

Appellants' App. Vol. 1 at 200.  The only obligation we glean from this provision, and the other provisions of this letter, is the obligation of the parties to negotiate the terms of a future merger agreement in good faith according to the guidelines set forth in the letter.

Pursuant to Oklahoma law, a letter agreement which memorializes the material terms of the parties' agreement may serve as a binding contract if the parties so intend.   See Raydon Exploration, Inc. v. Ladd    , 902 F.2d 1496, 1500 (10th Cir. 1990).  Our reading of the parties' October 29, 1993 letter agreement here does not reveal such intent.  Performance of the terms of the contract was not required until the date of closing, and there were a number of contingencies upon which performance was dependent.  In this light, it is clear that the Realmontes did not receive any interest in the Skolniks stock until December 8, 1993. It follows that their claimed injuries did not arise until after they acquired such interest.

-15-

Regardless of the "effective date" of the closing, it is our conclusion that the Realmontes did not acquire or become finally obligated to acquire Skolniks stock until the date of closing, December 8, 1993.        See Appellants' App. Vol. 1 at 236 (Skolniks was required to deliver stock certificates to the Realmontes at closing).  We conclude, therefore, that, under the facts presented here, the "effective as of" legal fiction inserted in the letter agreement and the merger agreement without further explanation, cannot be invoked to prejudice the rights of the Realmontes. [8]

---

[8]        We note that our decision on this issue prevents the incongruous result of rendering irrelevant a fraudulent document provided after the "as of" date in order to entice plaintiffs such as the Realmontes to remove the contingencies in the agreement letter and complete the deal.

E.  Conclusion

In sum, it is our conclusion that neither the method nor the timing of the Realmontes' acquisition of Skolniks stock precluded them from class membership.  Therefore, because the Realmontes were purported class members who opted out in favor of filing an individual action, they were entitled to the tolling of the statute of limitations from the commencement of the original class suit.  See Crown, Cork & Seal , 462 U.S. at 351-52.  In accord, the judgment of the United States District Court for the Western District of Oklahoma is REVERSED, and the matter is REMANDED to the district court for further proceedings consistent with this opinion.