[981 NE2d 240, 957 NYS2d 644]

EAST MIDTOWN PLAZA HOUSING COMPANY, INC., Appellant, v ANDREW M. CUOMO, as Attorney General of the State of New York, et al., Respondents. EAST MIDTOWN PLAZA TENANT-COOPERATOR ASSOCIATION, Intervenor-Appellant; EAST MIDTOWN PLAZA MITCHELL-LAMA ORGANIZATION, Intervenor-Respondent.

Argued October 10, 2012; decided November 19, 2012

**POINTS OF COUNSEL**

*Sullivan & Worcester LLP*, New York City (*George O. Richardson, III*, and *Michael T. Sullivan* of counsel), for appellant. I. East Midtown Plaza Housing Company, Inc. has the absolute right to exit the Mitchell-Lama program. (*United Housing Foundation, Inc. v Forman*, 421 US 837; *Matter of KSLM-Columbus Apts., Inc. v New York State Div. of Hous. & Community Renewal*, 5 NY3d 303; *Matter of Verdell v Lincoln Amsterdam House, Inc.*, 27 AD3d 388; *2550 Olinville Ave. v Crotty*, 149 Misc 2d 806, 185 AD2d 200, 81 NY2d 772; *Matter of Columbus Park Corp. v Department of Hous. Preserv. & Dev. of City of N.Y.*, 80 NY2d 19.) II. The Martin Act does not apply to East Midtown Plaza Housing Company, Inc.'s exiting the Mitchell-Lama program. (*Kralik v 239 E. 79th St. Owners Corp.*, 5 NY3d 54; *People v Landes*, 84 NY2d 655; *Council for Owner Occupied Hous. v Abrams*, 72 NY2d 553; *Assured Guar. [UK] Ltd. v J.P. Morgan Inv. Mgt. Inc.*, 18 NY3d 341; *United Housing Foundation, Inc. v Forman*, 421 US 837; *Isquith by Isquith v Caremark Intl., Inc.*, 136 F3d 531; *Howe v Bank for Intl. Settlements*, 194 F Supp 2d 6.) III. East Midtown Plaza Housing Company, Inc. properly counted the votes as one vote per share. (*Guzman v Haven Plaza Hous. Dev. Fund Co.*, 69 NY2d 559; *Matter of Acker v Berman*, 54 Misc 2d 647.)

*Eric T. Schneiderman, Attorney General*, New York City (*Richard Dearing, Barbara D. Underwood* and *David Lawrence III* of counsel), for State of New York, respondent. I. East Midtown Plaza Housing Company, Inc.'s proposed privatization is subject to the offering-plan requirement of the Martin Act. (*United Housing Foundation, Inc. v Forman*, 421 US 837; *Global Reins. Corp.-U.S. Branch v Equitas Ltd.*, 18 NY3d 722; *Matter of Walker v Walker*, 86 NY2d 624; *Abrahamson v Fleschner*, 568

F2d 862; *Rathborne v Rathborne*, 683 F2d 914; *Keys v Wolfe*, 709 F2d 413; *Perez-Rubio v Wyckoff*, 718 F Supp 217; *Pachter v Bernard Hodes Group, Inc.*, 10 NY3d 609; *New York State Psychiatric Assn., Inc. v New York State Dept. of Health*, 19 NY3d 17; *Matter of Badem Bldgs. v Abrams*, 70 NY2d 45.) II. The Attorney General reasonably rejected East Midtown Plaza Housing Company, Inc.'s proposed second amendment to its offering plan on the ground that it was false and misleading. (*Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs.*, 77 NY2d 753; *88 Assoc. v Abrams*, 159 AD2d 412; *Treger Mgt. Co. v Abrams*, 180 AD2d 614; *Matter of Gilman v New York State Div. of Hous. & Community Renewal*, 99 NY2d 144; *State of New York v Rachmani Corp.*, 71 NY2d 718; *Council for Owner Occupied Hous. v Abrams*, 72 NY2d 553.)

*Michael A. Cardozo, Corporation Counsel*, New York City (*Victoria Scalzo, Kristin M. Helmers* and *Ave Maria Brennan* of counsel), for New York City Department of Housing Preservation and Development, respondent. The Appellate Division properly found that the vote of the resident shareholders of East Midtown Plaza Housing Company, Inc. on the issue of exiting the Mitchell-Lama program must be counted on a "one vote per dwelling unit" basis. (*Matter of Brooklyn Assembly Halls of Jehovah's Witnesses, Inc. v Department of Envtl. Protection of City of N.Y.*, 11 NY3d 327; *Matter of Howard v Wyman*, 28 NY2d 434; *Matter of Tommy & Tina, Inc. v Department of Consumer Affairs of City of N.Y.*, 95 AD2d 724, 62 NY2d 671; *Kralik v 239 E. 79th St. Owners Corp.*, 5 NY3d 54; *Consolidated Resources, LLC v 210-220-230 Owner's Corp.*, 59 AD3d 579; *Mittman v Netherland Gardens Corp.*, 55 AD3d 512; *Guzman v Haven Plaza Hous. Dev. Fund Co.*, 69 NY2d 559; *Elliott v City of New York*, 95 NY2d 730; *Schumer v Caplin*, 241 NY 346; *Matter of Parkview Assoc. v City of New York*, 71 NY2d 274, 488 US 801.)

*Himmelstein, McConnell, Gribben, Donoghue & Joseph*, New York City (*Kevin R. McConnell* and *Serge Joseph* of counsel), for intervenor-appellant. I. East Midtown Plaza Housing Company, Inc.'s certificate of incorporation and the relevant statutes require a per-share vote. (*2550 Olinville Ave. v Crotty*, 149 Misc 2d 806, 185 AD2d 200, 81 NY2d 772; *Mendel v Henry Phipps Plaza W., Inc.*, 6 NY3d 783; *Blumenfeld v City of New York*, 44 Misc 2d 475; *Fe Bland v Two Trees Mgt. Co.*, 66 NY2d 556; *Wapnick v Seven Park Ave. Corp.*, 240 AD2d 245; *Spiegel v 1065 Park Ave. Corp.*, 305 AD2d 204; *Matter of Madison v Striggles*,

228 AD2d 170.) II. This Court owes no deference to the Department of Housing Preservation and Development's interpretation of the governing statutes. (*Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451; *Matter of Dworman v New York State Div. of Hous. & Community Renewal*, 94 NY2d 359; *Roberts v Tishman Speyer Props., L.P.*, 13 NY3d 270; *Matter of Gruber [New York City Dept. of Personnel—Sweeney]*, 89 NY2d 225; *Matter of Ansonia Residents Assn. v New York State Div. of Hous. & Community Renewal*, 75 NY2d 206; *Matter of Schenectady Police Benevolent Assn. v New York State Pub. Empl. Relations Bd.*, 85 NY2d 480; *Matter of KSLM-Columbus Apts., Inc. v New York State Div. of Hous. & Community Renewal*, 5 NY3d 303.) III. The Department of Housing Preservation and Development's interpretation of the regulation and its reversal in policy were arbitrary and capricious. (*Matter of Richardson v Commissioner of N.Y. City Dept. of Social Servs.*, 88 NY2d 35; *Matter of Charles A. Field Delivery Serv. [Roberts]*, 66 NY2d 516; *Matter of Blossom View Nursing Home v Novello*, 4 NY3d 581; *Matter of Cordero v Corbisiero*, 80 NY2d 771; *Matter of Roman Catholic Diocese of Albany v New York State Dept. of Health*, 66 NY2d 948; *Matter of CDL W. 45th St. v City of N.Y. Dept. of Fin.*, 308 AD2d 210; *Matter of Singh v Taxi & Limousine Commn. of City of N.Y.*, 282 AD2d 368; *Boreali v Axelrod*, 71 NY2d 1; *Matter of Nicholas v Kahn*, 47 NY2d 24.)

*Barry Mallin & Associates, P.C.*, New York City (*Barry Mallin* of counsel), for intervenor-respondent. I. East Midtown Plaza Housing Company, Inc.'s privatization plan is subject to the Martin Act disclosure requirements. (*All Seasons Resorts v Abrams*, 68 NY2d 81; *People v Landes*, 84 NY2d 655; *SEC v Ralston Purina Co.*, 346 US 119; *Doran v Petroleum Mgt. Corp.*, 545 F2d 893; *United Housing Foundation, Inc. v Forman*, 421 US 837; *Tcherepnin v Knight*, 389 US 332.) II. The Attorney General had a rational basis for rejecting East Midtown Plaza Housing Company, Inc.'s second amendment to the offering plan. (*Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222; *Matter of Salvati v Eimicke*, 72 NY2d 784; *Matter of Nelson v Roberts*, 304 AD2d 20; *E. & R. Mavin Constr. v Abrams*, 180 AD2d 425; *Matter of 140 W. 4th St. Corp. v Abrams*, 152 AD2d 847; *Matter of 44 W. 96th St. Assoc. v Abrams*, 85 AD2d 563; *Academy St. Assoc. v Spitzer*, 50 AD3d 271.) III. The Department of Housing Preservation and Development had a rational basis for determining that the criteria for balloting was one vote per unit. (*Guzman v Haven Plaza Hous. Dev. Fund Co.*, 69 NY2d 559; *Matter of Acker v Berman*, 54 Misc 2d 647.)

IV. East Midtown Plaza Housing Company, Inc. seeks to disavow the voting procedures after losing under the rules set forth in the offering plan.

*Collins, Dobkin & Miller, LLP*, New York City (*Stephen Dobkin* of counsel), and *Mary Foutz*, Brooklyn, for Mitchell-Lama Residents Coalition and others, amici curiae. I. The election held on a one-vote-per-apartment basis was in keeping with the fundamental nature of Mitchell-Lama cooperatives. (*Schwartz v Marien*, 37 NY2d 487; *Vernon Manor Co-op. Apts., Section I v Salatino*, 15 Misc 2d 491; *Smolinsky v 46 Rampasture Owners*, 230 AD2d 620.) II. There exist no statutory or regulatory exceptions to the application of the one-vote-per-apartment rule in this case. (*Matter of Tormey v LaGuardia*, 172 Misc 1091, 259 App Div 802, 283 NY 779; *Matter of Archdeacon v Town of Oyster Bay*, 12 Misc 3d 438; *Garson v Garson*, 105 AD2d 726, *affd sub nom. Garson v Rapping*, 66 NY2d 928; *Wapnick v Seven Park Ave. Corp.*, 240 AD2d 245; *Spiegel v 1065 Park Ave. Corp.*, 305 AD2d 204; *Avon Prods., Inc. v Chartwell Assoc. L.P.*, 907 F2d 322.) III. The absence of ongoing governmental oversight is an essential difference between private and Mitchell-Lama cooperatives mandating the application of the Martin Act to the proposed privatization of East Midtown Plaza Housing Company, Inc. (*Cadplaz Sponsors v Cadman Towers*, 84 Misc. 2d 961, 56 AD2d 780.)

### OPINION OF THE COURT

GRAFFEO, J.

In this proceeding, we hold that the Martin Act applies to the proposed privatization of a Mitchell-Lama cooperative apartment complex. Based on the circumstances of this case, we also conclude that a vote to determine whether the cooperative withdraws from the Mitchell-Lama program must be counted on a per-apartment basis rather than a per-share basis.

### I.

Petitioner East Midtown Plaza Housing Company, Inc. (East Midtown) has been a limited-profit housing company organized under the Mitchell-Lama Law since 1968.[1] It operates a 746-unit cooperative housing project located in six buildings in

---

**1.** The legislature adopted the Mitchell-Lama Law (Private Housing Finance Law art II) in 1955 to offer private housing companies financial incentives to develop low and moderate income housing (*see Matter of KSLM-*

Manhattan. Ownership shares in East Midtown are not allocated equally among the apartment units; larger units are allotted more shares. East Midtown's certificate of incorporation specifies that each shareholder is entitled to one vote at shareholder meetings, regardless of the number of shares owned. In 2004, East Midtown's cooperative shareholders held a vote to decide whether to withdraw from the Mitchell-Lama program and become a private cooperative apartment complex, as permitted by Private Housing Finance Law § 35.[2] Under the proposed privatization plan, East Midtown would dissolve and all its assets would be transferred to a newly incorporated private cooperative, accompanied by a formal issuance of new shares in the entity. If the votes were counted on a per-share basis, the 2004 proposal achieved the requisite two-thirds supermajority for passage, but if the votes were counted on a per-apartment basis, the proposal did not garner sufficient votes for privatization.

After the vote was taken, respondents, the New York City Department of Housing Preservation and Development (HPD) and the New York State Attorney General, informed East Midtown that a new vote was required because East Midtown had improperly held the privatization vote without first filing a cooperative offering plan with the Attorney General's office pursuant to the Martin Act. The Attorney General also notified East Midtown that, in accordance with the voting rights provision in East Midtown's certificate of incorporation, passage by two thirds of East Midtown's dwelling units, rather than two thirds of the outstanding shares, would be necessary for approval.

---

*Columbus Apts., Inc. v New York State Div. of Hous. & Community Renewal,* 5 NY3d 303, 308 [2005]). The program "encourages such housing by offering State and municipal assistance to developers in the form of long-term, low-interest government mortgage loans and real estate tax exemptions. In return for these financial benefits, developers agree to regulations concerning rent, profit, disposition of property and tenant selection" (*Matter of Columbus Park Corp. v Department of Hous. Preserv. & Dev. of City of N.Y.,* 80 NY2d 19, 23 [1992]).

2. The Mitchell-Lama Law states that a limited-profit housing company— like East Midtown—that is aided by a New York City loan made after May 1, 1959 may

> "voluntarily be dissolved, without the consent of the [New York City Department of Housing Preservation and Development] not less than twenty years after the occupancy date upon the payment in full of the remaining balance of principal and interest due and unpaid upon the mortgage or mortgages and of any and all expenses incurred in effecting such voluntary dissolution" (Private Housing Finance Law § 35 [2]).

East Midtown subsequently revised its privatization proposal and in 2008 the Attorney General accepted the offering plan. Unlike the 2004 proposal, the 2008 plan did not contemplate a transfer of property or a physical exchange of shares. Rather, the privatization was to be effectuated by an amendment to East Midtown's certificate of incorporation. The proponents of the new plan informed shareholders that HPD had taken the position that the privatization vote was to "be conducted on an apartment-by-apartment basis (i.e., one vote per apartment) without regard to the number of shares held by each shareholder." East Midtown further advised the shareholders that it was reserving the right to challenge the voting requirement directing a count on a per-apartment basis.

A second vote was held in 2009, resulting in the same outcome as the original 2004 vote: the proposal would have been approved if the votes were tallied using a one-vote-per-share rule, but not if counted under a one-vote-per-household formula as directed by the certificate of incorporation and HPD. Following the vote, East Midtown filed a proposed second amendment to the offering plan with the Attorney General. This amendment sought to declare the privatization plan "effective," stating that the 2008 plan had been adopted by "the affirmative vote of at least two thirds of the outstanding shares of East Midtown . . . by counting one vote per share." The Attorney General refused to accept the amendment.

East Midtown responded by commencing this CPLR article 78 proceeding seeking to compel the Attorney General to accept the second amendment declaring the plan effective and to direct HPD to recognize that the plan achieved the necessary two-thirds shareholder vote under the one-vote-per-share formula. The petition also sought a declaration that the Attorney General lacked jurisdiction over East Midtown's efforts to exit the Mitchell-Lama program on the theory that the Martin Act did not apply to the transaction. Two tenant organizations intervened in the litigation—East Midtown Plaza Tenant-Cooperator Association, which supported East Midtown, and East Midtown Plaza Mitchell-Lama Organization, a group that opposed privatization.

Supreme Court denied the petition and dismissed the proceeding (2010 NY Slip Op 30532[U] [2010]). The Appellate Division, with one Justice dissenting, affirmed (85 AD3d 485 [1st Dept 2011]). We granted East Midtown and East Midtown Plaza Tenant-Cooperator Association leave to appeal (18 NY3d 803 [2012]), and now affirm.

## II.

With respect to the jurisdictional reach of the Martin Act, East Midtown argues that it should not have been required to file an offering plan because the Attorney General lacks authority over its withdrawal from the Mitchell-Lama program. East Midtown contends that the Martin Act—the statutory predicate for the Attorney General's oversight—does not apply here because its 2008 privatization plan did not involve the "offering or sale" of securities as required by the statute. It emphasizes that, although the original 2004 proposal would have resulted in a transfer of assets and/or exchange of shares, the 2008 plan merely called for an amendment to East Midtown's certificate of incorporation, with no conveyance of shares. The Attorney General disagrees, asserting that, however it is packaged, the privatization of a Mitchell-Lama cooperative complex comfortably falls within the parameters of the Martin Act.

The Martin Act (General Business Law art 23-A) regulates the offer and sale of securities within or from New York (*see Kralik v 239 E. 79th St. Owners Corp.*, 5 NY3d 54, 58 [2005]). The Attorney General is responsible "for implementing and enforcing the Martin Act, which grants both regulatory and remedial powers aimed at detecting, preventing and stopping fraudulent securities practices" (*id.* at 58-59). As relevant here, the Martin Act makes it illegal for a person to make or take part in "a public offering or sale" of securities consisting of participation interests in real estate, including cooperative apartment buildings, unless an offering statement is filed with the Attorney General (General Business Law § 352-e [1] [a]).[3] The purpose of the disclosures required in an offering plan is to safeguard the purchasers of cooperatives and condominiums by mandating "full disclosure of risks" and promoting "unit purchasers' self-protection by analysis of risks" (*Kerusa Co. LLC v W10Z/515 Real Estate Ltd. Partnership*, 12 NY3d 236, 243 [2009] [internal quotation marks and citation omitted]).

We have emphasized that General Business Law § 352-e (1) (a) "should be liberally construed to give effect to its remedial purpose of protecting the public from fraudulent exploitation in

---

**3.** Plainly, the Martin Act applies to the conversion of a rental apartment building into a cooperative building (*see 511 W. 232nd Owners Corp. v Jennifer Realty Co.*, 98 NY2d 144 [2002]; *Richards v Kaskel*, 32 NY2d 524 [1973]). The question posed by this appeal is whether the act further applies to the privatization of an already-existing Mitchell-Lama cooperative apartment complex.

the offer and sale of securities" (*All Seasons Resorts v Abrams*, 68 NY2d 81, 86-87 [1986]). In our application of the Martin Act we have repeatedly found it appropriate to be guided by the decisions of federal courts interpreting federal blue sky laws (*see id.* at 87; *see also People v Landes*, 84 NY2d 655, 660 [1994] ["Although the Martin Act was enacted in 1921, its present form generally tracks the Federal securities acts of 1933 and 1934. Accordingly, we have looked to Federal court decisions construing those statutes when interpreting our own"]; *State of New York v Rachmani Corp.*, 71 NY2d 718, 726 [1988] [observing that the remedial purposes of the state and federal statutes are the same and that General Business Law § 352-e (1) (a) "makes specific reference to the Federal Securities Act of 1933"]). We therefore turn to the federal precedents.

Federal courts have recognized that changes in the rights of the holders of existing securities can amount to a "purchase or sale" within the meaning of the federal securities laws. The Second Circuit has explained that the test is whether there has been such a "significant change in the nature of the investment or in the investment risks as to amount to a new investment" (*Gelles v TDA Indus., Inc.*, 44 F3d 102, 104 [2d Cir 1994] [internal quotation marks and citation omitted]; *see also Abrahamson v Fleschner*, 568 F2d 862, 868 [2d Cir 1977], *cert denied sub nom. Harry Goodkin & Co. v Abrahamson*, 436 US 905 [1978] [same]; 3 Hazen, Securities Regulation § 12.6 [1] at 557 [6th ed 2009] ["Concepts of purchase and sale are to be construed flexibly in order to accomplish the purpose of the securities laws. The courts will consider the economic reality of the transaction and whether it lends itself to fraud in the making of an investment decision"]). The pertinent inquiry focuses on "the economic reality of the transaction" (*Keys v Wolfe*, 709 F2d 413, 417 [5th Cir 1983] [internal quotation marks and citation omitted]). We have applied a similarly adaptable standard in ascertaining whether an interest qualifies as a "security" within the meaning of the Martin Act, recognizing that substance and economic actuality will control over form (*see All Seasons Resorts*, 68 NY2d at 88).

Here, the privatization of East Midtown's cooperative apartment complex would result in a number of substantial changes to the nature of its shareholders' interests. Most fundamentally, privatization would enable residents to sell their shares at market rates. In stark contrast, the resale price of shares in a Mitchell-Lama cooperative apartment is set by law at an amount

that permits a seller to recover paid-in capital, not earn a profit (*see* Private Housing Finance Law § 31-a). Indeed, East Midtown acknowledges that the ability to sell shares at market prices is the primary reason why it desires to exit the Mitchell-Lama program.

▪ Furthermore, privatization would result in East Midtown's loss of eligibility for government-subsidized financing and property tax reductions available under Mitchell-Lama. Other significant alterations upon privatization would include the imposition on shareholders of a 45% transfer fee or "flip tax" to be paid to East Midtown from the proceeds of the first sale of shares; the possibility that individual shareholders would become disqualified for government programs for persons in need; and potential increases in maintenance charges. In short, the changes affecting shareholders are substantial enough to constitute a different investment such that the proposed privatization can fairly be characterized as an "offering or sale" of securities under the Martin Act.

We do not accept East Midtown's argument distinguishing the 2004 and 2008 privatization plans since it elevates form over substance. Mindful of the economic realities of the transaction, it matters not that the 2008 plan envisioned an amendment to the certificate of incorporation rather than a physical exchange of shares, as contemplated by the earlier plan (*see* 3 Hazen, Securities Regulation § 12.6 [3] at 558-559 [6th ed 2009] ["Amendments to a corporation's articles of incorporation may result in the alteration of existing shareholder rights and thus change the nature of the shares. Alterations in the rights of securities holders can constitute a sale of the old securities and a purchase of the new"]). The end result under either proposal is the same—privatization and market value resale potential. Hence, the Attorney General properly required East Midtown to file an offering statement under the Martin Act to allow existing shareholders to make an informed decision regarding the pros and cons of withdrawal from the Mitchell-Lama program.

### III.

East Midtown also contends that the courts below erred in holding that the shareholder vote to privatize had to be counted on a one-vote-per-apartment basis. It claims that the Business Corporation Law and an HPD regulation both require that the vote be calculated using a one-vote-per-share formula, regardless of the language in the certificate of incorporation. Under

this formulation, the 2009 vote resulted in sufficient votes for approval of the 2008 privatization plan. HPD and the Attorney General counter that the courts below properly concluded that the vote was governed by a one-vote-per-apartment rule and, under this methodology, the 2009 vote did not achieve the necessary supermajority margin to exit Mitchell-Lama.

Our analysis focuses on East Midtown's certificate of incorporation, which expressly provides that its shareholders "shall be entitled to one vote at any and all meetings of stockholders for any and all purposes regardless of the number of shares held by such holder, except as otherwise provided by statute." In other words, as East Midtown acknowledges, the certificate generally establishes a one-vote-per-apartment formula. East Midtown relies on the final clause of the voting provision, asserting that Business Corporation Law § 1001 "otherwise provides" a different method—it directs that a privatization vote be conducted on a one-vote-per-share basis.

Business Corporation Law § 1001 generally governs the dissolution of a corporation.[4] As relevant to this case, section 1001 provides that dissolution may be authorized at a shareholder meeting by "two-thirds of the votes of all outstanding shares entitled to vote thereon" (Business Corporation Law § 1001 [a] [ii]). East Midtown interprets this language to mandate a per-share vote for corporate dissolution, regardless of any contrary language that may be found in the corporation's certificate of incorporation. We are not persuaded for three reasons. First, section 1001 requires a two-thirds vote of "all outstanding shares *entitled to vote*" to approve dissolution (emphasis added). In substance, the one-vote-per-apartment rule set forth in East Midtown's certificate of incorporation entitles the holder of shares to one vote at stockholder meetings.[5] Second, the reference to "all outstanding shares" in section 1001 clarifies that a dissolution vote must be passed not merely by two thirds of those voting at the shareholder meeting

---

4. The Mitchell-Lama Law contemplates the dissolution and reconstitution of a limited-profit housing company that desires to privatize (*see* Private Housing Finance Law § 35 [2], [3]).

5. East Midtown's certificate of incorporation permits only one class of shares. The one-vote-per-apartment voting method is compatible with the certificate's requirements because East Midtown has but one class of shares and the certificate specifies how votes are counted within that class—a holder is entitled to one vote.

(*see* Business Corporation Law § 614 [b] [unless otherwise specified in the Business Corporation Law, votes are to be calculated by reference to those present and voting at a quorum meeting]), but by a supermajority of all shareholders in the company. Finally, the thrust of section 1001 is directed to how corporate shareholders may authorize dissolution; the statute does not purport to calculate the relative weight to be given to each share entitled to vote.

Instead, a different provision of the Business Corporation Law specifically addresses shareholder voting rights. Business Corporation Law § 612 (a) states that "[e]very shareholder of record shall be entitled at every meeting of shareholders to one vote for every share standing in his name on the record of shareholders, *unless otherwise provided in the certificate of incorporation*" (emphasis added). Section 612 therefore establishes a default rule of one vote per share. But it allows corporations to adopt a different vote-count methodology in their certificates of incorporation. And East Midtown did just that, it selected a one-vote-per-household voting formula in its certificate of incorporation. Because the Business Corporation Law does not mandate any specific method of vote calculation, we believe that East Midtown's certificate of incorporation controls.[6]

East Midtown further asserts that an HPD regulation in effect at the time of the 2009 vote required that the votes be counted on a per-share basis. That regulation provided: "Dissolution and/or reconstitution of the mutual housing company requires approval of two-thirds (2/3) of the outstanding shares of the corporation as mandated by the Business Corporation Law" (28 RCNY 3-14 [i] [former (7)]).[7] Although the regulation may have been inartfully worded, it incorporated by reference and tracked Business Corporation Law § 1001 (a) (ii). For the same reasons that lead us to conclude that no conflict exists between the Business Corporation Law and East Midtown's certificate of incorporation, the HPD regulation can be read compatibly with the certificate of incorporation.

Consequently, the courts below correctly held that the 2009 vote should be calculated using the one-vote-per-apartment

---

**6.** We note that the parties do not address the applicability, if any, of the Not-for-Profit Corporation Law.

**7.** HPD subsequently amended 28 RCNY 3-14 (i) (7) to require approval by two thirds of the dwelling units in the housing company. The parties all agree that the revised regulation, promulgated after the 2009 vote, does not apply to this case.

formula contained in East Midtown's certificate of incorporation. Because the necessary two-thirds approval was not met under this methodology, the Attorney General properly refused to accept East Midtown's second amendment declaring an effective vote to privatize. East Midtown therefore remains subject to the Mitchell-Lama Law until such a time as two thirds of the households agree to a privatization plan.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge LIPPMAN and Judges CIPARICK, READ, SMITH and PIGOTT concur.

Order affirmed, with costs.