**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 24 2002**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

RUTTER & WILBANKS CORP.;
ELLIOTT A. RIGGS; WILLIAM R.
THURSTON, Trustee; GORDON
TANNER; WALTER K. ARBUCKLE
TRUST; ERIC B. WELLS; KEVIN C.
WELLS; CHARLES R. WIGGINS;
KEN KAMON,

        Plaintiffs - Appellees,

    v.

SHELL OIL COMPANY; SHELL
WESTERN E&P, INC.; MOBIL OIL
CORPORATION; MOBIL
PRODUCING TEXAS & NEW
MEXICO, INC.; MOBIL
EXPLORATION & PRODUCING,
U.S., INC.; EXXON MOBIL, INC.;
CORTEZ PIPELINE COMPANY, a
partnership; SHELL $CO_2$ COMPANY,
LTD., a Texas limited partnership;
KINDER MORGAN $CO_2$ COMPANY,
a Texas limited partnership,

        Defendants - Appellees,

No. 02-1220

W. M. BRELSFORD; JUDITH
WALKER FUNK; REED GILMORE
and W. H. GILMORE, JR., in their
representative capacities as co-
executors of the Estate of W. H.
Gilmore, Sr. and Dorothy R. Gilmore;

PEGGY B. STUART; ANTELOPE ENERGY CO., LLC; ANTELOPE PRODUCTION CO.; WILLIAM G. KEMP and MARIE J. BENCH, in their representative capacities as co-trustees of the Bernard M. Bench Family Trust,

Objectors - Appellants.

MARGARET ANN AINSWORTH; CHARLES M. McAFEE & COMPANY; DOROTHY GAIL CHAPPELL; JOHN LARRY CLARK; NELDA LEE BARLOW; TROY M. OLIVER; SHORLENE OLIVER; POVERTY POINT PROPERTIES, L.P.; JOHN H. MILLER; DEE RENAY; HAZEL J. NEELY; INGRID JOANN HARTLEY; OLIVIA CARSON, LLC; INA F. GRAY; BARBARA E. GLAZNER; JOHN H. GLAZNER; CLARA CUNDIFF; ESTATE OF VELMA LOUISE HENDERSON; LOUIS M. GRAY; KIP E. MAKEEVER; EDITH DELIGHT JAMES; LAURA H. KENNEDY; CHARLES R. WIGGINS; ELVA GORSUCH; KEN KAMON; JERRY CHAFFIN; DOROTHY CHAFFIN; JOHNNIE E. DURAN; VICTOR DURAN; LeROY OLIVER; J. ELLEN OLIVER; WANDA HEATHMAN; IDENE MINCHIN; ERIC B. WELLS; KEVIN C. WELLS; WOOD OIL COMPANY,

Plaintiffs - Appellees,

v.

No. 02-1221

SHELL OIL COMPANY; SHELL WESTERN E&P, INC.; MOBIL OIL CORPORATION; MOBIL PRODUCING TEXAS & NEW MEXICO, INC.; MOBIL EXPLORATION & PRODUCING U.S., INC.; EXXON MOBIL, INC.; CORTEZ PIPELINE COMPANY, a partnership; SHELL $CO_2$ COMPANY, LTD., a Texas limited partnership; KINDER MORGAN $CO_2$ COMPANY, a Texas limited partnership,

Defendants - Appellees,

BRUCE TEFFT; LUCINDA DAVIS; CHARLES BUTLER,

Objectors - Appellants.

**APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO
(D.C. NOS. 00-Z-1854 and 00-Z-1856)**

Gary J. Cruciani, McKool Smith, P.C., Dallas, Texas (Jean E. Dubofsky, Jean E. Dubofsky, P.C., Boulder, Colorado, and Dean Neuwirth, Burke & Neuwirth, P.C., with him on the briefs) for Objectors - Appellants.

Marie Roach Yeates, Vinson & Elkins, L.L.P., Houston, Texas (Andrew McCollam III, Gwen J. Samora, Vinson & Elkins, L.L.P., Houston, Texas; Kent Sullivan, Stinson Morrison Hecker LLP, Kansas City, Missouri; Phillip D. Barber, Phillip D. Barber P.C., Denver, Colorado; Shannon H. Ratliff, Akin Gump Strauss Hauer & Feld, LLP, Austin, Texas; Robert E. Youle, Brian G. Eberle, Sherman & Howard, L.L.C., Denver, Colorado; John F. Shepherd, Holland & Hart L.L.P., Denver, Colorado, with her on the briefs) for Defendants - Appellees.

John M. Cogswell, Buena Vista, Colorado and Michael J. Heaphy, Denver, Colorado, submitted a brief on behalf of Plaintiffs - Appellees.

Before **TACHA**, **ANDERSON**, and **EBEL**, Circuit Judges.

**ANDERSON**, Circuit Judge.

This appeal arises from the district court's approval of a $70 million class action settlement of four related cases involving the production of carbon dioxide ($CO_2$) contained within the McElmo Dome Unit in Colorado. Appellants are eleven objectors ("Objectors") who assert interests in several small royalty and overriding royalty interests in the McElmo Dome Unit, and who object to the settlement.[1]

---

[1]Objectors are members of only two of the three class actions involved in this case and purport to appeal the settlement only as it relates to those two classes. Plaintiffs have filed a Motion to Partially Dismiss this appeal on the ground that Objectors are not class representatives, have made no effort to achieve that status, and therefore do not represent the class members in those two cases and can only object to the settlement as it affects their own individual interests. Plaintiffs seek dismissal of the appeals as to all class members other than Objectors because, inasmuch as the settlement agreement provides that there shall be no distributions as long as there are appeals pending, the pendency of Objectors' appeals prevents any distribution.

While we are sympathetic to Plaintiffs' plight, we can see no practical way to separate Objectors' individual interests from those of the other class members without upsetting the entire settlement fund. Moreover, in <u>Devlin v. Scardelletti</u>, 122 S. Ct. 2005 (2002), in which the Supreme Court held that nonnamed non-intervening class members objecting to the approval of a settlement may appeal that approval even though they were not permitted to intervene, the Court noted that such an objector "will only be allowed to appeal that aspect of the District

(continued...)

For the reasons that follow, we affirm the district court's approval of the settlement.

## BACKGROUND

The first of the four related actions was filed in October 1996 as a purported class action on behalf of a coalition ("Coalition") of more than seventy McElmo Dome interest owners against various Shell Oil Company and Mobil Oil Company entities and the Cortez Pipeline Company (collectively "Defendants"). CO$_2$ Claims Coalition v. Shell Oil Co., No. 96-Z-2451 (D. Colo. filed Oct. 22, 1996). The Coalition's claims generally were for damages and for future relief caused by the wrongful pricing by Defendants of CO$_2$ that was transferred through the Cortez Pipeline to oilfields in West Texas where Defendants used it to enhance oil production from older oilfields. After class certification was denied on two separate occasions because the court determined that the alleged class members' interests were too divergent to warrant class certification, the Coalition case proceeded as an individual (non-class) action.

---

[1](...continued)
Court's order that affects him." Id. at 2013, 2010. The Court described that "aspect," however, as "the District Court's decision to disregard his objections." Id. at 2010. Objectors' objections were directed at the entire settlement. We therefore deny Plaintiffs' motion to partially dismiss the appeals.

Subsequently, in September 2000, three class actions were filed representing the three subgroups of interest holders in the McElmo Dome Unit, royalty interest owners ("RIOs"), the overriding royalty interest owners ("ORIOs"), and the small share working interest owners ("SSWIOs"). The three class actions are Ainsworth v. Shell Oil Co., No. 00-Z-1856 (D. Colo. filed Sept. 22, 2000) (on behalf of the McElmo Dome RIOs; Rutter & Wilbanks Corp. v. Shell Oil Co., No. 00-Z-1854 (D. Colo. filed Sept. 22, 2000) (on behalf of McElmo Dome ORIOs); and Watson v. Shell Oil Co., No. 00-Z-1855 (D. Colo. filed Sept. 22, 2000) (on behalf of the SSWIOs). The proposed class representative for each action was alleged to be a holder of the specific type of interest involved in the action, and represented similarly situated unnamed class members. The claims asserted were largely identical to those claims asserted in the $CO_2$ Claims Coalition action.

Objectors' counsel, Gary Cruciani, is the lead counsel in two competing class actions against the Defendants filed on behalf of certain McElmo Dome ORIOs and RIOs in the probate court of Denton County, Texas: Shores v. Mobil Oil Corp., No. GC-99-01184 (Denton County Prob. Ct. filed Dec. 22, 1999) (on behalf of ORIOs); First State Bank of Denton v. Mobil Oil Corp., No. 8552-01 (Denton County Prob. Ct. filed March 2001) (on behalf of RIOs).

By the summer of 2001, the $CO_2$ Claims case was nearing trial, after extensive discovery and other pretrial proceedings. After sporadic mediation efforts, at the encouragement of the district court, in August 2001, the Colorado parties pursued mediation under the guidance of former Colorado Supreme Court Justice Howard Kirshbaum. After more than seven weeks of negotiation, the parties agreed to and signed a settlement of all four actions (The $CO_2$ Claims Coalition action and the three class actions) on September 24, 2001. They also filed a joint motion for preliminary approval of the settlement.

The basic terms of the settlement were as follows: defendants agreed to pay almost $52.9 million in cash, with 8% interest from August 21, 2001, until the final payment, the actual sum to be adjusted up or down based upon the number of actual subscribers to the settlement; defendants agreed to pay future relief of various sorts, which future relief the district court determined had a present value of $22.5 million; and the actual allocation of the settlement funds was to be determined by the district court. As finally adjusted, the settlement fund was $50,430,308.00. The settlement essentially required a minimum of 90% participation. After opt-outs, the final subscription rate to the settlement was as follows: 99.7869% of the RIOs; 87.5882% of the ORIOs; and 99.9996% of the SSWIOs. In total, the subscription percentage was 96.0081%. Objectors have not opted out of the Colorado settlement.

Meanwhile, on August 30, 2001, two of the Objectors (two of the Texas class representatives) acting on behalf of a named plaintiff in each of the two competing Texas actions, filed motions to intervene in the Colorado proceedings in order to object to the upcoming settlement. After the Plaintiffs in the Colorado proceedings had filed various motions, including the motion for preliminary approval of the class action settlement on behalf of the three class actions (Rutter, Ainsworth, and Watson) and a motion to appoint a fairness expert to review the fairness of the overall settlement, including any allocation as determined by the court, the district court held a status conference on October 1, 2001. After hearing from the two Objectors' counsel at the October 1 status conference, the district court established a briefing schedule on Objectors' motion to intervene.

Accordingly, Objectors appeared and argued at an October 26 hearing on their motion to intervene, at the conclusion of which the district court denied the motions to intervene, "primarily . . . on timeliness." App. Vol. XV, tab 134 at 5010. Then, a hearing on preliminary settlement approval took place on November 14. The court noted that although it was not permitting the Objectors to formally intervene, it would permit them to file *amicus* briefs. On December 6, the court signed the order conditionally certifying the class, preliminarily approving the settlement, and formally appointing James Lyons as the fairness expert. Mr. Lyons was specifically directed to address the following matters:

(1) the fairness, reasonableness, and adequacy of the Settlement Agreement as to the class members; (2) the fairness of Plaintiffs' proposed allocation of the Settlement Fund; (3) the fairness of Plaintiffs' claims for payment of costs and attorneys' fees from the Settlement Fund; (4) the fairness of Plaintiffs' proposed bonus allocation to the class representatives; and (5) other matters in the contemplation of the Court.

Lyons Aff. at ¶ 1 n.1, App. Vol. XII, tab 35 at 4125.

On December 14, a hearing on preliminary allocation was held, at which Objectors' counsel, Mr. Cruciani, presented his objections to the proposed allocation, and the court ensured that Mr. Cruciani was able to express his concerns to the fairness expert, Mr. Lyons.

On January 25, 2002, Objectors filed a 57-page brief objecting to the settlement, including affidavits and exhibits. They also filed motions to intervene for the limited purpose of objecting to the proposed class settlement.[2] They

---

[2]As indicated, supra, the Supreme Court has recently ruled that a class member who objects to a class settlement need not intervene in the district court in order to have standing to appeal the district court's approval of the settlement. Devlin, 122 S. Ct. at 2013. We note that one court has held that Devlin only applies to mandatory class settlements, where class members have no option to opt out. See Ballard v. Advance America, 79 S.W. 3d 835, 837 (Ark. 2002); see also In re: Gen. Am. Life Ins. Co. Sales Practice Litig., Lewis & Ellis, Inc. v. Gen. Am. Life Ins. Co., 302 F.3d 799, 800 (8th Cir. 2002) (noting Ballard and stating "we believe the limited reading of Devlin has considerable merit," but avoiding deciding the issue). Were we to similarly narrow Devlin's application, this entire appeal could be dismissed because Objectors did have the right to opt out of the settlement.

However, as Devlin makes clear, the issue of whether a non-intervening unnamed class member may challenge the fairness of the settlement "does not

(continued...)

objected on numerous grounds, including the total amount of the settlement, its resolution of the "no transportation" claim,[3] the allocation of the settlement, alleged conflicts of interest by Plaintiffs' counsel, and alleged "collusion" in the settlement negotiations. In his Affidavit concerning the proposed class action settlement, Mr. Lyons stated that he "had various and extensive discussions with counsel for all parties, including counsel for Objectors." Lyons Aff. ¶ 1, App. Vol. XII, tab 35 at 4125.

In February 2002, Objectors moved to take expedited discovery and sought to depose everyone involved in the settlement, which was denied. They also requested a status conference to discuss whether they would be allowed to present live testimony at the final fairness hearing scheduled for April 8, 2002. There

---

[2](...continued)
implicate the jurisdiction of the courts under Article III of the constitution," nor does it "raise the sorts of concerns that are ordinarily addressed as a matter of prudential standing." Devlin, 122 S. Ct. at 2009. We therefore elect to leave the scope of Devlin to another day, and proceed to the merits of this case, particularly in view of the fact that the parties do not discuss that argument and because the result of our decision is the same (unfavorable to Objectors).

[3]In brief, the "no transportation" claim involved a dispute as to who should have borne the cost of transporting the $CO_2$ to its ultimate destination in West Texas. The Objectors assert that the claim, which they included among their claims in the Texas cases, is worth up to $200 million. The Colorado cases did not include such a claim, and it is released by the settlement agreement. The fairness expert, along with Plaintiffs and Defendants, argue that because of many uncertainties regarding the viability of such a claim, it would be worth, if anything, far less than $200 million. The "no transportation" claim, which is based on several different theories, has not thus far succeeded in the Texas cases.

-10-

was apparently a status conference held on February 11, 2002, which was not transcribed, and in which Objectors again requested permission to present live testimony at the final fairness hearing. The court invited briefs on the issue. Objectors then filed a motion to present live testimony, which the district court denied, stating:

> The Court, having presided over this entire matter for almost six years, is familiar with the case, and all elements thereof. The objectors have been afforded procedural protections. They have received notice, despite initial inefficiencies, and have alerted the Court to their concerns over this settlement via voluminous written material, exhibits, and affidavits. They have participated in this case since their intervention motions were filed, and have had access to significant discovery in this matter and the Texas cases. Under these circumstances . . . objectors' motion for live testimony will be denied.

Order at 3, App. Vol. XI, tab 104 at 3772.

However, the court did state that Objectors "may file additional written proffers and/or affidavits not to exceed five pages each, on or before April 3, 2002," and it stated that they "may file with the Court suggested questions to be posed to Mr. Lyons at the Fairness Hearing, which the Court may or may not ask, on or before April 4, 2002." Id. at 3772-3773. At Objectors' request, those deadlines were extended to April 5, 2002, with written submissions not to exceed ten pages, although Objectors were directed they "may not file affidavits and/or proffers by persons who previously have filed similar papers with the Court." Minute Order, App. Vol. XII, tab 108, 109. The court also denied Objectors'

motions to intervene for the limited purpose of objecting to the proposed settlement.

On April 5, Objectors filed written proffers of the live testimony they had hoped to present, exhibits, written questions for Mr. Lyons, and a motion for leave to reply to the parties' responses to their objections. Additional materials Objectors proffered on the day of the hearing, April 8, were not considered by the court.

At the April 8 final fairness hearing, counsel for Plaintiffs, Defendants, and Objectors were present and were allowed to argue. Additionally, Mr. Lyons testified as to his opinion of the fairness and reasonableness of the settlement. The district court repeatedly reminded all present that it was familiar with the case and had carefully considered all arguments, specifically including Objectors' arguments. Indeed, the judge stated, "[i]n light of the fact that the parties are settling or are attempting to settle this case, I am benefitted by the objectors' position in bringing a certain adversarial element back into the proceedings. This has caused an examination of the issues raised." Transcript of Settlement Hr'g, App. Vol. XVI, tab 139 at 5227. The district court accordingly gave final approval of the settlement at the conclusion of the April 8 hearing, and, on May 6, 2002, entered final judgments granting class certification, giving final approval of the settlement, and dismissing Plaintiffs' claims with prejudice. It then entered

findings of fact and conclusions of law which specifically addressed Objectors' arguments, ruling against them and concluding that the settlement was fair, reasonable, and adequate.

Objectors brought this appeal, arguing: (1) the district court denied them due process by refusing to permit them to present live testimony in the final fairness hearing and denying them the right to file rebuttal affidavits and to cross-examine the fairness expert; (2) Plaintiffs' counsel failed to adequately represent the class and had conflicts of interest which rendered the settlement unfair and unreasonable; (3) the settlement itself was not fair and reasonable; and (4) the district court erred in failing to find that the entire settlement agreement was a collusive "reverse auction."

### DISCUSSION

"Due process issues, which call for legal conclusions, are subject to *de novo* review." United States v. Clark, 84 F.3d 378, 381 (10th Cir. 1996). By contrast, "[w]e review the court's approval of the settlement agreement for an abuse of discretion." United States v. Hardage, 982 F.2d 1491, 1495 (10th Cir. 1993); see also Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998) (noting that the district court's "decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the

litigants, and their strategies, positions, and proof"). Any factual findings we review under the clearly erroneous standard. Fed. R. Civ. P. 52(a). "In reviewing a court's determination for abuse of discretion, we will not disturb the determination absent a distinct showing it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error of judgment." Cartier v. Jackson, 59 F.3d 1046, 1048 (10th Cir. 1995).

## I. Due Process Claim

Objectors argue their due process rights were violated by the district court's refusal to let them present live testimony in support of their objections at the final fairness hearing. They further argue the district court compounded that error by not allowing Objectors to present rebuttal affidavits or cross-examine Mr. Lyons, the fairness expert.

"'The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.'" Kowalczyk v. INS, 245 F.3d 1143, 1147 (10th Cir. 2001) (quoting Mathews v. Eldridge, 424 U.S. 319, 333 (1976)); Jones v. Nuclear Pharm., Inc., 741 F.2d 322, 325 (10th Cir. 1984) ("The essence of procedural due process is that the parties be given notice and opportunity for a hearing."). As we held in Jones, "[a]n objecting shareholder is not entitled, as a matter of right, to an evidentiary hearing during a

settlement hearing." Jones, 741 F.2d at 325. Objectors attempt to distinguish

Jones by arguing that the objector in that case "had complete access to

discovery." Id. Our review of the record in this case fully supports the district

court's conclusion that Objectors in this case had adequate discovery and

opportunity to be heard:

> [Objectors] have received notice, despite initial inefficiencies, and have alerted the Court to their concerns over this settlement via voluminous written materials, exhibits, and affidavits. They have participated in this case since their intervention motions were filed, and have had access to significant discovery in this matter and the Texas cases.

Order at 3, App. Vol. XI, tab 104 at 3772. "The universal rule of due process is

fairness; the trial court afforded all parties to the settlement, including [objector],

such fairness." Jones, 741 F.2d at 325.

Similarly, we perceive no additional due process violation because the

district court, shortly before the final fairness hearing, refused to permit Objectors

to file rebuttal affidavits by parties who had already filed affidavits, and by its

refusal to permit cross-examination of the fairness expert.[4] "Although the right to

be heard is an integral part of due process, an individual entitled to such process

---

[4]As Plaintiffs and Defendants point out, Objectors had ample time to file rebuttal affidavits. The refusal about which they complain involves the decision five days before the final fairness hearing to not permit Objectors to file affidavits from those who had previously filed "similar" affidavits.

-15-

is not entitled to dictate to the court the precise manner in which he is to be heard." Id. Objectors were afforded adequate due process.

## II. Adequacy of Representation and Conflicts of Interest

Rule 23(a) demands that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Hanson, 150 F.3d at 1020; see also Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 626 n.20 (1997) ("The adequacy heading also factors in competency and conflicts of class counsel.").

Objectors argue the district court abused its discretion in certifying the settlement classes, because the class representatives, and Plaintiffs' counsel, failed to adequately represent the classes and/or suffered conflicts of interest. Objectors particularly focus on Plaintiffs' counsel, alleging "numerous conflicts of interest." Appellants' Op. Br. at 28. The district court carefully examined this argument, and concluded "the Court finds that Plaintiffs' Counsel has vigorously and competently represented all class members." Findings of Fact and Conclusions of Law at 5-6, App. Vol. XV, tab 131 at 4786-87. Indeed, as

Plaintiffs point out, Objectors fail to demonstrate why, given the fact that the court, not the parties, determined the allocation of the settlement between the various subgroups, any alleged conflict between those subgroups would be magnified or exacerbated by the fact that Plaintiffs' counsel represented all the groups. Rather, that situation would motivate Plaintiffs' counsel to seek the largest overall award possible.

Further, as Defendants point out, each subgroup had its own class representative during settlement negotiations, and the fairness expert spent considerable time reviewing the details of the settlement and the allocation, including recommending some modifications, which the district court accepted. See Amchem Prods., Inc., 521 U.S. 591, 627 (1997) (noting that a settlement needs "structural assurance of fair and adequate representation for the diverse groups and individuals affected"). Additionally, Objectors themselves and their counsel argued strenuously on behalf of the RIOs and ORIOs, the two subgroups involved in the Texas cases. See Gottlieb v. Wiles, 11 F.3d 1004, 1008 n.4 (10th Cir. 1993), overruled in part on other grounds, Devlin v. Scardelletti, 122 S. Ct. 2005 (2002) (noting that any claim of inadequacy of representation "was cured by the [objectors'] active participation in the Rule 23(e) settlement approval hearing and by the district court's explicit addressing of the [objectors'] objections in its order approving settlement."). Given the district court's familiarity with the case,

we perceive no abuse of discretion in its conclusion that "the adequacy requirement of Rule 23(a)(1) is satisfied in every respect and that no disabling conflicts exist here." Id. at 6.

### III. Approval of Settlement as Fair and Reasonable

We have noted four factors to be considered in assessing whether a proposed settlement is fair, reasonable and adequate:

(1)     whether the proposed settlement was fairly and honestly negotiated;
(2)     whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
(3)     whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
(4)     the judgment of the parties that the settlement is fair and reasonable.

Gottlieb, 11 F.3d at 1014; see also Jones, 741 F.2d at 324.

Objectors make a variety of arguments as to why the settlement was unfair and unreasonable.  They particularly argue that the allocation of the settlement fund among the various subgroups is unfair.  They also repeatedly allege that the settlement was the product of collusion, although they point to little concrete evidence in support of this allegation.[5]  The district court carefully went through

---

[5]For instance, they assert that, because Defendants defeated Plaintiffs' two prior motions for class certification in the $CO_2$ Claims Coalition case, but

(continued...)

each of the four factors listed in <u>Gottlieb</u> and <u>Jones</u> and considered all of Objectors' arguments.  The court thoroughly considered Objector's allocation arguments, and their arguments concerning purported collusion, and solicited extensive input from the fairness expert.  We conclude that the district court did not abuse its discretion in determining that the settlement, from which an extremely small percentage of class members opted out, was fair, reasonable and adequate, for substantially the reasons stated in the district court's findings of fact and conclusions of law.

## IV.  Reverse Auction Argument

Finally, Objectors argue the district court erred in failing to find that the settlement agreement was a collusive "reverse auction" designed to undercut the competing Texas class actions.  The district court found that there was no evidence of collusion, and nothing Objectors direct us to in the record convinces us that the district court's finding on that point was clearly erroneous.  Moreover,

---

[5](...continued)
supported class certification in connection with the settlement of that case plus the three class actions, an inference of collusion between Plaintiffs and Defendants is warranted.  However, as Defendants assert, it was not inconsistent to oppose class certification in the <u>$CO_2$ Claims Coalition</u> case, when all types of interests were involved with no differentiation between the different subgroups, but to support it when each subgroup was separated into its own class with its own class representative.

Objectors have no response to the argument the settling parties make, and with which the district court agreed, that Objectors reverse auction argument "would lead to the conclusion that no settlement could ever occur in the circumstances of parallel or multiple class actions—none of the competing cases could settle without being accused by another of participating in a 'collusive reverse auction.'" Findings of Fact and Conclusions of Law at 20, App. Vol. XV, tab 131 at 4801. Absent some more concrete evidence of collusion than Objector's conclusory allegations and inferences, we decline to disturb the district court's conclusion that the settlement was not a collusive reverse auction.[6]

## CONCLUSION

We have carefully reviewed the lengthy record and briefs in this case, and have fully considered all of Objectors' arguments. For the foregoing reasons, we AFFIRM the district court's judgment.

---

[6]In a short footnote in their brief, Objectors also assert that the district court erred in awarding excessive attorney's fees and in failing to follow the Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974) factors. They fail to further develop this argument, and we therefor do not address it.

-20-