**Corey ROBINSON, et al., individually and on behalf of all persons similarly situated, Plaintiffs,**

v.

**Elizabeth GILLESPIE, et al., Defendants.**

No. 02–4136–SAC.

United States District Court, D. Kansas.

Oct. 16, 2003.

Christopher Joseph, Mary K. Savage, Ryan K. Elliot, Joseph & Hollander, P.A., Topeka, KS, Christopher McHugh, Stephen M. Joseph, Joseph & Hollander, P.A., Wichita, KS, for Plaintiffs.

Deanne Watts Hay, Ron D. Martinek, Timothy A. Shultz, Parker & Hay, LLP, James M. Crowl, Richard V. Eckert, Office of Shawnee County Counselor, Robert D. Hecht, Office of District Attorney, Topeka, KS, Jean Paul Bradshaw, II, Steven M. McCartan, Lathrop & Gage L.C., Kansas City, MO, for Defendants/Third Party Plaintiff.

Hsing Kan Chiang, Kansas Insurance Department, Stephen O. Phillips, Kansas Attorney General, Topeka, KS, for Movant.

Kent Sullivan, Stinson Morrison Hecker LLP, Michael D. Strong, Lewis, Rice & Fingersh, L.C., Kansas City, MO, Robert E. Duncan, II, Duncan, Chartered, John C. Frieden, Terry A. Iles, Frieden, Haynes & Forbes, for Third Party Defendant.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

This civil rights case comes before the court on plaintiffs' motion for class certification. The 196 individual plaintiffs ask the court to certify a class consisting of certain persons who have been detained at the Shawnee County Jail pursuant to a warrantless arrest. Plaintiffs propose certification of seven separate subclasses. Quite unconventionally, plaintiffs move to certify one subclass, subclass 7, as to defendant Hecht only, under Rule 23(b)(2), and to certify the other six subclasses against defendant Gillespie only, under Rule 23(b)(3). Defendants oppose the motion.

Defendants have requested oral argument on this motion, but the court finds that oral argument would not materially assist the court, so denies the motion.

### General legal framework—merits

Generally, plaintiffs base this § 1983 case alleging violations of plaintiffs' Fourth Amendment rights on the teachings of *Gerstein v. Pugh* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), and *County of Riverside v. McLaughlin*, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991).[1] *Gerstein* held that the Fourth Amendment requires a determination of probable cause by a judicial officer "promptly" after a warrantless arrest. *County of Riverside* held that determinations of probable cause which occur within 48 hours of arrest are generally "prompt,"

meeting the dictates of *Gerstein.* As the Court stated:

> Taking into account the competing interests articulated in *Gerstein,* we believe that a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein.* For this reason, such jurisdictions will be immune from systemic challenges.

*County of Riverside,* 500 U.S. at 56, 111 S.Ct. 1661.

■ Probable cause hearings provided within 48 hours of a warrantless arrest may nonetheless be unconstitutional. As the Court explained,

> This is not to say that the probable cause determination in a particular case passes constitutional muster simply because it is provided within 48 hours. Such a hearing may nonetheless violate *Gerstein* if the arrested individual can prove that his or her probable cause determination was delayed unreasonably. Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake. In evaluating whether the delay in a particular case is unreasonable, however, courts must allow a substantial degree of flexibility.

*County of Riverside,* 500 U.S. at 56, 111 S.Ct. 1661.

■ Conversely, probable cause hearings provided later than 48 hours may be found constitutional.

> Where an arrested individual does not receive a probable cause determination within 48 hours, the calculus changes. In such a case, the arrested individual does not bear the burden of proving an unreasonable delay. Rather, the burden shifts to the government to demonstrate the exis-

---

1. The court admits some confusion in attempting to discern the true nature of plaintiffs' claims. Plaintiffs assert that they are not making a "systemic" challenge to the policies and procedures of the county. Dk. 178, p. 3; *see County of Riverside.* Yet plaintiffs' briefs are replete with language which appears to belie that assertion. *See e.g.,* Dk. 178, p. 4, 7, 13, 14, 19, 22, 23, 27, 28. Although this issue may need to be resolved in the future, the court does not find it controlling at this juncture.

tence of a bona fide emergency or other extraordinary circumstance.

*County of Riverside,* 500 U.S. at 57, 111 S.Ct. 1661.

## Class Certification requirements

■ "A party seeking to certify a class is required to show under a strict burden of proof that all the requirements of Fed. R.Civ.P. 23(a) are clearly met," *Reed v. Bowen,* 849 F.2d 1307, 1309 (10th Cir.1988) (quotation marks and alterations omitted).

The requirements for class certification pursuant to Rule 23(a) are: (1) the proposed class must be so numerous that joinder of all members is impracticable; (2) the party seeking class certification must demonstrate that there is at least one question of law or fact common to the class; (3) the claims of the representative plaintiffs must be typical of the claims of the class; and (4) the representative parties must demonstrate an ability to fairly and adequately represent the interests of the class members.

*Realmonte v. Reeves,* 169 F.3d 1280, 1285 (10th Cir.1999).

■ Once plaintiffs meet the above requirements of numerosity, commonality, typicality, and adequacy of representation, they must also establish that the case fits within one of the three subcategories of Rule 23(b). Fed.R.Civ.P. 23(b). Additionally, where plaintiffs propose subclasses, plaintiffs must show that each subclass independently meets the standards of Rule 23 class certification. *See Twelve John Does v. District of Columbia,* 117 F.3d 571, 575 (D.C.Cir.1997).

■ When in doubt, a court should err in favor of the maintenance of a class action. *Esplin v. Hirschi,* 402 F.2d 94, 99 (10th Cir.1968), *cert. denied,* 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969). However, this "doctrine should not be extended to limit unreasonably the sound discretion of trial courts in cases such as this, where discretion may be the key to a realistic administration of Rule 23, particularly with respect to a determination of the most fair and efficient procedure." *Wilcox v. Commerce Bank of Kansas City,* 474 F.2d 336, 344 (10th Cir. 1973). *See also Boughton v. Cotter Corp.* 65

F.3d 823, 827 (10th Cir.1995) ("where, as here, there are multiple types of claims, more than one form of relief sought and the parties disagree about the number of models necessary to deal with the various ways in which [the law may have been violated] it may not be so simple as to err on the side of certification just to keep the option open ...")

## Definition of Class

■ In determining whether to certify a class, the court begins with the proposed definition of the class. Plaintiffs propose certification of the following class:

Persons arrested without a warrant and imprisoned at the Shawnee County Jail after September 4, 2000, who did not receive a prompt probable cause determination, as well as persons imprisoned in the Shawnee County Jail after the deadline set by a magistrate for keeping the person imprisoned without charges being filed.

Dk. 150, p. 1.

The court is concerned that this definition of the proposed class is untenable because of its use of the word "prompt" in reference to probable cause determinations. The decision whether a probable cause determination is or is not "prompt," within the meaning of that term as used in the relevant cases noted above, is not an objective one which can be measured solely by reference to hours and minutes. Instead, as *County of Riverside* make clear, some judicial determinations of probable cause within 48 hours of arrest will not be found to be constitutionally "prompt," and some probable cause hearings held after 48 hours will be found to be constitutionally "prompt." Therefore, to determine whether an allegedly unconstitutional probable cause hearing was or was not "prompt," the court will have to examine specifics of the case, such as whether any delay was for the purpose of gathering additional evidence to justify the arrest, was motivated by ill will against the arrested individual, or was merely delay for delay's sake, or was due to a bona fide emergency or other extraordinary circumstance. *See County of Riverside,* 500 U.S. at 56, 111 S.Ct. 1661. Determining whether a person falls within the class, as it is currently defined by plaintiffs, thus cannot

be done without deciding the merits of the case.

Further, plaintiffs' definition of the class is underinclusive of all the proposed subclasses. At least one subclass, as currently defined, would not fall within the definition of the class. Subclass 6, comprised of persons who received unreliable probable cause determinations, is defined without reference to the promptness or lack thereof of the probable cause hearing and without reference to any deadline set by a magistrate. Accordingly, persons in that subclass are not included in the general class definition.

■ "Absent a cognizable class, determining whether Plaintiffs or the putative class satisfy the other Rule 23(a) and (b) requirements is unnecessary." *Davoll v. Webb,* 160 F.R.D. 142, 146 (D.Colo.1995) (denying motion for class certification because definition of proposed class to include members of police department "who have or will have disabilities" was untenable). Nonetheless, the court examines the proposed definition of the subclasses.

**Definition of subclasses**

In their motion, plaintiffs propose that the court certify seven subclasses, defined as follows:

Subclass 1—All persons arrested for crimes deemed "domestic" who did not receive a probable cause determination at their weekday "domestic" first appearance.

Subclass 2—All persons arrested for crimes deemed "non-domestic" who did not receive a probable cause determination at the weekday "non-domestic" first appearance.

Subclass 3—All persons arrested for crimes deemed "domestic" who did not receive a weekend or holiday probable cause determinations.(sic)"

Subclass 4—All persons who received or should have received a weekend probable cause determination on Sunday, but could have received a probable cause determination on Saturday because they were arrested and imprisoned at the Jail on or before Saturday at 11:00 A.M. and had not yet received a probable cause determination.

Subclass 5—All persons who received a probable cause determination at their first appearance, but could have been brought to a first appearance the day before for a probable cause determination because they were arrested and imprisoned at the Jail on or before 6:00 A.M. the previous weekday for "non-domestic" charges or on or before 11:00 A.M. for "domestic" charges and had not yet received a probable cause determination.

Subclass 6—All persons who received a weekend or holiday probable cause determination that was not reliable because the duty judge made the determination without considering a sworn affidavit or hearing testimony from a witness about the grounds for the arrest.

Subclass 7—All persons who were imprisoned at the Shawnee County Jail after the deadline set by a magistrate at the first appearance for keeping the person imprisoned without a complaint being filed.

Dk. 150, p. 1–3.

In their reply brief, plaintiffs admit an error in their proposed definition of Subclass 5, and now wish to change the definition of subclass 5 to the following:

Persons arrested without a warrant and imprisoned at the Shawnee County Jail after September 4, 2000, who could have been brought to a first appearance the day before for their first appearance because they were arrested and imprisoned at the Jail on or before 6:00 A.M. the previous weekday for "non-domestic" charges or on or before 11:00 A.M. for "domestic" charges and had not yet received a probable cause determination.

Essentially, this definition omits from the previous definition the requirement that such persons had "received a probable cause determination at their first appearance."

The court finds several problems with the proposed subclasses. First, plaintiffs identify the approximate number of individuals in some, but not all, of the seven subclasses they propose. The court cannot find that plaintiffs have met the requirement of numerosity for each of the seven subclasses

when plaintiffs have failed to estimate how many persons each subclass consists of.

Second, the subclasses are not mutually exclusive. Rather, some plaintiffs fit into more than one subclass. For example, some persons alleged to be in subclass 5, even using the latest definition thereof, are also within subclasses 1 or 2. Similarly, persons in subclass 6, which is defined with reference to the lack of "reliability" of the probable cause hearing, could also fit within other subclasses which are defined solely with reference to the timing of the probable cause hearing. Subclass 3 overlaps with subclass 1, although perhaps merely as a result of inartful pleading, and persons in subclass 7 could fit within a number of other subclasses. Although the court sees potential overlaps of other subclasses, the above list suffices to illustrate the problems inherent in the current subclass definitions.

The definition of subclass 6 is problematic in its use of the term "reliable." Determining whether a probable cause hearing was unreliable because of something the duty judge did or did not do compels reference to standards which would require a legal conclusion in defining the class. Because the proposed definition is based upon criteria which are not fixed or objective, the determination whether a person falls within the subclass cannot be done without deciding the merits of the case. Plaintiffs have not defined the class as "all persons for whom the duty judge determined probable cause without considering a sworn affidavit or hearing testimony from a witness," or by stating solely facts which could be determined without the necessity of making any legal conclusions.

Additionally, the fact that seven subclasses are proposed tends to indicate a lack of commonality in the class as a whole. Although the court is aware of cases in which two subclasses have been certified, *see e.g., Jackson by Jackson v. Fort Stanton Hosp. and Training School*, 964 F.2d 980 (10th Cir.1992); *Esparza v. Valdez*, 862 F.2d 788 (10th Cir.1988), plaintiffs show the court no case in which seven subclasses have been certified, and propose no reason why such classification is desirable here. *See Zapka v.*

*Coca–Cola Co.*, 2000 WL 1644539 (N.D. Ill. Oct 27, 2000) (denying class certification motion for seven subclasses as unmanageable).

 Although the court has the power to redefine classes or subclasses *sua sponte* prior to certification, *see* Rule 23(c)(4), *American Finance System Inc. v. Harlow*, 65 F.R.D. 94, 107 (D.Md.1974), the court has no obligation to do so, *see United States Parole Commission v. Geraghty*, 445 U.S. 388, 408, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980). The court declines to undertake this task at present because it is not convinced that granting class certification would make this case any less unmanageable than it currently is, and plaintiffs have failed to meet other requirements of Rule 23, as addressed below.

### Adequacy of Representation

 A party seeking to certify a class is required to show under a strict burden of proof that the class is adequately represented by a named party. *In re Integra Realty Resources, Inc.*, 262 F.3d 1089, 1112 (10th Cir.2001). "The adequacy of representation requirement is of particular importance because inadequate representation would infringe upon the due process rights of absentee class members who are bound by the final judgment of the suit." *Edgington v. R.G. Dickinson & Co.*, 139 F.R.D. 183, 190 (D.Kan.1991).

Under Rule 23(a)(4), the proposed class representatives must assure the court that their interests "are sufficient to induce vigorous advocacy on their part; that their interests are not antagonistic to those of class members; and that they have the means, including competent counsel, to pursue their case." *Wyandotte Nation v. City of Kansas City, Kansas*, 214 F.R.D. 656 (D.Kan.2003).

 "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir.2002) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.1998)).

■ Determining whether the named plaintiffs will be vigorous advocates for the class makes inquiry into various arenas appropriate. Plaintiffs may be found to be inadequate representatives where they lack personal knowledge concerning the type and extent of damages they have suffered, *see Sunbird Air Services, Inc. v. Beech Aircraft Corp.,* 1992 WL 193661, *4 (D.Kan.1992), where they lack credibility concerning their liability claims, *id.,* or where they have afforded their attorneys unfettered discretion to conduct the litigation, *id.* "This inquiry into the knowledge of the representative is to ensure that the party is not simply lending his name to a suit controlled entirely by the class attorney; the named party must be an adequate representative in addition to having adequate counsel. Wright, Miller & Kane, Federal Practice and Procedure, § 1766 (2d ed.1986)." *Sunbird Air Services, Inc.,* 1992 WL 193661 at *4.

■ Similarly, a class representative may be found to be inadequate if he has physical or mental limitations which may preclude him from being in a position to act in the best interest of the class. *See Edgington,* 139 F.R.D. at 195–196 (noting serious questions about adequacy of representation due to class representatives' age and poor health). "Having a fiduciary obligation to the putative class, class representatives must have the character and means to carry out that obligation including the abilities to examine independently the decisions of counsel and to play an active role in the litigation for the protection of the interests of the class." *Edgington,* 139 F.R.D. at 195–196.

### Identification of class representatives

Here, the court's ability to make the relevant inquiries into the adequacy of the proposed class representatives is hampered by plaintiffs' failure to make a threshold showing, either by name or by descriptive language, of who the proposed class representatives are.

The only time plaintiffs refer to certain plaintiffs by name is in discussing typicality issues for the seven proposed subclasses.[2]

For example, regarding proposed subclass 1, plaintiffs state:

> Plaintiffs Theodore A. Allen [and 52 other listed plaintiffs] assert, pursuant to *Gerstein* and *County of Riverside,* that their Fourth Amendment rights were violated because they did not receive a prompt probable cause determinations (sic) because they were arrested for crimes deemed "domestic" and, therefore, did not receive a probable cause determination at the 3:00 P.M. "domestic" first appearances.

(Dk. 151, p. 16). Plaintiffs similarly list the names of numerous other plaintiffs as being in subclasses 2 through 7.

Given plaintiff's failure to specifically identify the proposed class representatives, the court initially wondered whether the 53 plaintiffs named as being in subclass 1 were intended to be the class representatives for that subclass, and, similarly, whether those plaintiffs named as being in the other six proposed subclasses were to be the class representatives of the subclasses in which they were named. This would mean that 162 of the 196 named plaintiffs would be the class representatives, as that many are specifically named as being within the seven proposed subclasses.

Upon reading plaintiffs' reply brief, however, the court believes that such a construction would have been erroneous. The reply brief reveals, inferentially, that plaintiff's unstated intent was apparently for each of the 196 individual plaintiffs named in the Third Amended Complaint to be class representatives, despite the fact that 34 of them are not listed as being within any of the proposed subclasses, and are not mentioned except in the caption of the case. *See* Dk. 178, p. 23 (not refuting defendant's assumption that all plaintiffs named in caption of the Third Amended Complaint were the class representatives, and stating "34 representative plaintiffs ... were not mentioned as fitting within a subclass. The list of individuals falling within each subclass ... simply was not comprehensive ... Each representative plaintiff does, in fact, fall within a subclass.") Thus

2. Plaintiffs listed certain individuals for the purpose of demonstrating typicality, not for the purpose of identifying them as representatives of the class or subclass. *See* Dk. 178, p. 23.

the only reasonable inference to be had from plaintiffs' pleadings is that all 196 plaintiffs are proposed to be the class representatives.

**Adequacy of class representatives**

 The court has no difficulty envisioning a host of managerial issues which would inhere in having 196 persons serve as class representatives, and believes that the sheer number of class representatives poses insurmountable management problems to maintenance of the proposed class action. Plaintiffs proffer no reason why having 196 class representatives would make this case any fairer or more manageable than having the 196 individual plaintiffs it currently has.

The court is additionally concerned with the fact that 34 of the proposed class representatives are not listed as being within any subclass. The court cannot reasonably begin to find those 34 plaintiffs to be adequate representatives of unnamed class members when no allegation is even made as to the nature of their claims or which group of persons they are alleged to represent.

 Additionally, some proposed class representatives whom plaintiffs allege are within one subclass may not in fact belong to that subclass. For example, defendants show the court that some plaintiffs alleged not to have received a probable cause determination did in fact receive one. *See* Dk. 166, p. 18–19, and Exhs. 3b, 3c (showing that at least three purported class representative plaintiffs of subclass 1, Martinez, Brown, and Davis, received probable cause determinations.) Plaintiffs respond that this "is certainly possible," but contend that it is unnecessary at the certification stage of litigation to know who all the persons are who will fall within the definition of the class. Nonetheless, it is quite necessary at the certification stage to show that each class representative for a subclass actually fits within the definition of that subclass. *See e.g. Edgington,* 139 F.R.D. at 196.

 The evidence regarding Martinez, Brown, and Davis raises another issue as well—the possibility that some proposed class representatives will be subject to unique defenses. "Class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Aks v. Southgate Trust Co.,* 1992 WL 401708, *5 (D.Kan.1992), quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d 176, 180 (2d Cir.1990), *cert. denied,* 498 U.S. 1025, 111 S.Ct. 675, 112 L.Ed.2d 667 (1991). As plaintiffs concede, some plaintiffs had outstanding warrants or parole violations and thus would have remained in jail regardless of the timing of their probable cause determinations. Some are subject to the defense that they in fact received a "prompt" probable cause determination. Others may or may not be subject to a statute of limitations or other legal defense. The court finds that it is quite possible that some class representatives will be so preoccupied with their unique defenses either as to liability or as to damages that their representation of the class would suffer, making certification inappropriate. *See Edgington,* 139 F.R.D. at 194. Although the court does not consider the merits of the claims at the class certification stage, it must take into account the substantive elements of plaintiff's claims so as to envision the form the trial on the issues would take.

Further, plaintiffs offer no facts in support of the contention that any class representative is adequate. Counsel for plaintiffs admits that he has not attempted to undertake what may be a tedious, if not burdensome, task of securing affidavits from the 196 proposed class representatives in support of his allegation that each is a vigorous advocate for the class. Instead, counsel offers to provide copies of the attorney-client contracts, should the court so request, and offers to draft, have signed, and produce, at the court's request, affidavits from "representative class members." (Dk. 178, p. 12.) Although affidavits from proposed class representatives are routinely offered in support of class certification motions in cases in which discovery on class issues has not been completed, this court declines to dictate to counsel the manner in which he should meet his burden to show adequacy of representation.

In alleging that the class representatives are adequate, counsel relies primarily upon the fact that a plethora of plaintiffs is willing

and able to participate in the litigation. The court does not believe, however, that counsel can achieve by the sheer quantity of plaintiffs that which he has failed to demonstrate as to the quality of their representation. Adequacy is not shown by numbers alone. In short, plaintiffs ask the court to find that 196 persons known to the court only by their names as listed on the case caption are adequate representatives of the class. Because of the paucity of evidence in support of such a finding, the court cannot do so.

For all the reasons stated above, the court finds that plaintiffs have not met their burden to show that the requirements of Rule 23 have been met. Because certification would be legally improper, the court does not reach other Rule 23 issues that would require an exercise of discretion. Accordingly, plaintiffs' motion for class certification shall be denied.

**Manageability of case**

 The court notes that with or without class certification, the case as currently styled poses a host of managerial issues regarding discovery and trial which cry out for special handling by the court.

In moving for leave of court to file their Third Amended Complaint, plaintiffs asserted that it "simply adds as plaintiffs members of the proposed class and more fully sets out the relevant facts," Dk. 126, p. 3. This assertion was made at a time when there was no definition of any "proposed class" by which the magistrate could have tested the accuracy of the statement, because plaintiffs postponed filing their motion for class certification from its original due date in December of 2002, until after they filed their amended complaint in June of 2003. Nonetheless, the magistrate was aware at the time he granted plaintiffs' motion to amend of plaintiffs' intent to request class certification, and may have granted the motion to amend in anticipation of class certification.[3]

 In deciding whether to grant a motion to amend a complaint, a court is to consider several factors. These include "whether the amendment will result in undue prejudice, whether the request was unduly

and inexplicably delayed, was offered in good faith, or that the party had sufficient opportunity to state a claim and failed." *State Distributors, Inc. v. Glenmore Distilleries Co.*, 738 F.2d 405, 416 (10th Cir.1984). Amendments adding parties additionally require consideration of Fed.R.Civ.P. 20, governing permissive joinder.

Consequently, this requires a determination by the district court of whether any right to relief asserted by plaintiffs against all defendants "in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and any operation of law or fact common to all will arise in the action." Fed.R.Civ.P. 20(a).

*State Distributors, Inc. v. Glenmore Distilleries Co.*, 738 F.2d 405, 416 (10th Cir. 1984).

The magistrate's decision to permit plaintiffs to amend their complaint by adding 192 additional parties plaintiff was critical in shaping the nature of this litigation. That decision was based upon plaintiffs' representation that the amendment did not change their claims, legal theories, or tactics, thus defendants would not suffer undue prejudice. *See* Dk. 126, p. 3, Dk. 145, p. 3. Having closely examined the nature of plaintiffs' claims for purposes of resolving this motion for class certification, the court is concerned that plaintiffs' representation may not remain accurate as to all plaintiffs.

Plaintiffs' motion for class certification demonstrates that the claims of all 196 plaintiffs did not arise out of the same transaction, occurrence, or series of transactions or occurrences. Rather, they arose on different dates from different factual situations, and resolution of their claims would require numerous individual determinations. This is evidenced in part by the fact that plaintiffs found it necessary to separate their factual claims into seven different subclasses before they could assert any commonality of facts within each subclass. The varying nature of the factual claims currently asserted by the 196 plaintiffs places defendants in the position of having to defend a dizzying array of persons and claims.

---

**3.** The court believes that certification of a class, appropriately defined and which meets the requirements of Rule 23, would generally be the preferable approach to managing this type of case.

The court thus requests that the magistrate reconsider his decision to grant plaintiffs' motion to add 192 additional plaintiffs via their Third Amended Complaint, in light of the current posture of the case.[4] In the event the magistrate reaffirms his decision to grant the motion to amend, the court encourages the magistrate to take whatever other action he deems desirable to actively manage this case, including determining whether entry of a stay of discovery would be appropriate until a decision is reached on the legal issues common to all plaintiffs.[5]

IT IS THEREFORE ORDERED that plaintiffs' motion for class action determination (Dk. 150) is denied.

IT IS FURTHER ORDERED that defendants' motion for oral argument on plaintiff's motion for class determination (Dk. 179) is denied.

IT IS FURTHER ORDERED that the magistrate reconsider his order which granted plaintiff's motion to file a Third Amended Complaint.

---

4. Although the court has the power to sua sponte review the decision to grant plaintiffs' motion to amend, it declines to exercise that power, choosing instead to permit the magistrate to reconsider its decision.

5. This may include, for example, the nature and scope of defendant Gillespie's duty to release those who have been arrested without a warrant and who have not had a probable cause hearing within 48 hours, or to release those who have not been charged by the charging date established by the magistrate.